LAUREN C. WOODRUFF, Appellant, *v.* THE ERIE RAILWAY COMPANY et al., Respondents.

While a railroad corporation organized under the General Railroad Act of this State has no express authority, under the said act, to lease its road and franchises to an individual, such a lease is neither *malum in se* nor *malum prohibitum,* nor is it void as contrary to public policy.

As to whether such a lease is *ultra vires, quære.*

A lessee, who has under such a lease had the possession and use of the property, is estopped from questioning its validity in an action to recover the stipulated rent.

The estoppel which thus binds the lessee also binds all who claim through or under him; and one to whom he has transferred his interest in the demised property, and who has had the use and occupation thereof, may not question the validity of his lease.

*Abbott* v. *J. G. & K. H. R. R. Co.* (80 N. Y. 27), distinguished.

One who has placed the means for paying a debt in the hands of another, upon his covenant to pay the same, may maintain an action in equity to compel a performance of the covenant, without first paying the debt; he is not limited to his action on the covenant.

The E. & G. V. R. R. Co. leased its road, properties and franchises to plaintiff, for the unexpired term of its charter, he covenanting to pay as rent a specified sum, by paying and taking up interest coupons, to the amount specified, upon bonds issued by the company. Plaintiff entered into the use and occupation of the property and subsequently leased the same to the E. R. Co. By various orders of the Supreme Court, granted in actions to which the company last named and all interested in its property, as incumbrancers or otherwise, were parties, defendant J. was appointed receiver of said property, with authority to continue the operation of the road of the company, and also, in his discretion, all roads leased by it, including that so leased to it by plaintiff, and to pay any rent then due and thereafter becoming due under the leases. J. took possession of the E. & G. V. road, and continued to hold and operate it in connection with the other lines placed under his control as such receiver. In an action to compel J. to pay, out of funds in his hands applicable thereto, the coupons falling due on the bonds while he acted as receiver, *held,* that he was estopped from denying the validity of the lease to plaintiff, or of that from him to the E. R. Co.; that as none of the parties had appealed from the orders appointing J. and defining his powers, they could not dispute or question said powers; that the court had full authority to direct how the property should be managed while in the possession of the receiver; that whatever might be the rights of the various parties, as between themselves, to priority in the distribution of the assets of the insolvent corporation,

such rights could affect only the property remaining after the liabilities created by the receivership had been fully paid ; that the receiver, by taking possession of and occupying the leased property, manifested his election to continue the lease, and incurred a liability to pay the rent according to its terms ; that plaintiff, by his contract with the E. R. Co., became, so far as the latter was concerned, a mere surety for the payment of the debt and had the right to call upon it and upon the receiver, for the period of his occupancy, to indemnify and protect him ; and so, that the plaintiff was entitled to the relief sought.

*Woodruff* v. *E. R. Co.* (25 Hun, 246), reversed.

Also *held,* that the court had power to authorize an action to determine the rights of the parties, instead of determining them upon a motion.

(Argued October 4, 1883 ; decided November 20, 1883.)

APPEAL from order of the General Term of the Supreme Court, in the fourth judicial department, made October 28, 1881, which reversed a judgment in favor of plaintiff, entered upon a decision of the court on trial at Special Term. (Reported below, 25 Hun, 246.)

The nature of the action and the material facts are, stated in the opinion.

*John A. Van Derlip* for appellant. The contract between the Erie and Genesee Valley Railroad Company and the plaintiff was not *ultra vires* but fully authorized by the General Railroad Act of 1850 and its amendments. (Potter's Dwarris on Statutes, 142, 145 ; *People* v. *Stephens,* 13 Hun, 17 ; Laws of 1855, chap. 302, § 1 ; Laws of 1867, chap. 254 ; Laws of 1869, chaps. 237, 844 ; 1 Kent's Com. 463 ; *President, etc.,* v. *People,* 9 Barb. 161–9 ; *Rogers* v. *Bradshaw,* 20 Johns. 735 ; *McCartee* v. *Orphan Asylum,* 9 Cow. 437: *Rexford* v. *Knight,* 15 Barb. 627 ; *Waller* v. *Harris,* 20 Wend. 555–562 ; *U. S.* v. *Babbitt,* 1 Black [U. S.], 61 ; *Koning* v. *Bayard,* 3 Wend. 258 ; *Haight* v. *Holley,* 10 id. 218 ; *Rogers* v. *Kneeland,* 20 id. 447 ; *Gelpecke* v. *City of Dubuque,* 1 Wall. 220–21 ; Dwarris on Statutes, 155, n. 5 ; 5 Beav. 581–2 ; *Davis* v. *Fairborn,* 3 How. [U. S.] 636, 644–5 ; 1 Paine's U. S. C. R. 400, 405–6 ; *Abbott* v. *Johnstown R. R. Co.,* 80 N. Y. 27, 30 ; *Thomas* v. *R. R. Co.,* 101 U. S. 71, 83.) When a contract between corporations

or between a corporation and an individual has been executed by one of the parties and not the other, the delinquent party cannot set up *ultra vires* as a defense. It is only when the contract remains executory on both sides that that defense is available. (*Moss* v. *Rossie Mining Co.*, 5 Hill, 137; *Bissell* v. *M. S. & N. I. R. R. Co.*, 22 N. Y. 258; *Parish* v. *Wheeler*, id. 494; *Whitney Arms Co.* v. *Barlow*, 13 id. 62; *Oil Creek & All. R. R. Co.* v. *Penn. Trans. Co.*, 83 Penn. St. 160; *Grant* v. *Henry C. Coal Co.*, 80 id. 208; *Thompson* v. *Lambert*, 44 Iowa, 236; *Bradley* v. *Bullard*, 55 Ill. 413; *Trask* v. *Davis*, 10 Cush. 252; *Fuller* v. *Melrose*, 1 Allen, 166; *Alleghaney* v. *McClusken*, 14 Penn. St. 81; *O. & M. R. R. Co.* v. *McCarthy*, 17 Abb. L. J. 194; *Mutual Life Ins. Co.* v. *Wilcox*, id. 426; *Arnot* v. *Erie R'y Co.*, 67 N. Y. 315; *Buffett* v. *T. & B. R. R. Co.*, 40 id. 168; *Fisher* v. *N. Y. C. & H. R. R. R. Co.*, 46 id. 644; *Remsen* v. *Graves*, 41 id. 471; *Olcott* v. *Tioga R. R. Co.*, 27 id. 546; *Castle* v. *Lewis*, 78 id. 134–6; *Kent* v. *Quicksilver Mining Co.*, id. 183–4–5–7.) Where a contract contains an express covenant to pay a debt for which a plaintiff is liable, an action may be maintained, upon a failure of the defendant to pay, without first paying the debt. (*In re Negus*, 7 Wend. 499, 502; *Thomas* v. *Allen*, 1 Hill, 145; *Churchill* v. *Hunt*, 3 Denio, 321, 325; *Rawson* v. *Copland*, 2 Sandf. Ch. 251, 254–5; *Cady* v. *Allen*, 22 Barb. 388, 395; *Gilbert* v. *Wiman*, 1 N. Y. 350, 553; *Trinity Church* v. *Higgins*, 48 id. 532, 535; *Seligman* v. *Dudley*, 14 Hun, 186, 189; *Farnsworth* v. *Boardman*, Sup. Ct. [Mass.]; *Marsh* v. *Pike*, 10 Paige, 595; 24 Alb. L. J. 517.)

*E. C. Sprague* for respondents. The lease or transfer by the Erie and Genesee Valley Railroad Company of its railroad, franchises and rights to the plaintiff was an abandonment of its corporate functions, and rendered it incapable of performing its duties to the public, and being without legislative authority, against public policy, and in violation of the statutes, was, therefore, illegal and void. (*Abbott* v. *Johnstown, etc., R. R. Co.*,

80 N. Y. 27; *Thomas* v. *R. R. Co.,* 101 U. S. 71; *People* v.
*A. & V. R. R. Co.,* 77 N. Y. 232; *Troy & B. R. R. Co.* v.
*B. H. T. & W. R. Co.,* 86 id. 107; *R. R. Co.* v. *R. R. Co.,*
115 Mass. 347; *Coe* v. *R. R. Co.,* 10 Ohio St. 372; *Black* v.
*Canal Co.,* 22 N. J. Eq. 130; *Beman* v. *Bufford,* 6 Eng. L. &
Eq. 106; *R'y Co.* v. *R'y Co.,* 12 id. 224; *Winch* v. *R. R.
Co.,* 13 id. 506; *R. R. Co.* v. *R. R. Co.,* 4 DeG. & J. 362;
*Thomas* v. *R. R. Co.,* 101 U. S. 71, 79, 83.) The agreement
between the plaintiff and the Erie Railway Company was
illegal, *ultra vires* and void, and the Erie railway was not
bound by its covenants. It had no corporate power to
bind itself to pay the bonded debt of the Erie and Genesee
Valley Railroad Company, or to build or operate a railroad
beyond its corporate limits. (*T. & R. R. Co.* v. *B., etc., Co.,*
86 N. Y. 107; *O. & L. R. R. Co.* v. *R. R. Co.,* 63 id. 176,
180; *Day* v. *N. Y. Central,* 51 id. 583; *R. R. Co.* v. *R. R.
Co.,* 63 id. 180; *Gillett* v. *Maynard,* 5 Johns. 85; *King* v.
*Brown,* 2 Hill, 485; *Cook* v. *Daggett,* 2 Allen, 439; *Erben*
v. *Lorillard,* 19 N. Y. 299; *Richards* v. *Allen,* 17 Me. 296;
2 Madd. Ch. Pr. 243, 244; Kerr on Receivers, 195, 196;
*Neute* v. *Link,* 15 Simons, 450; 3 McN. & G. 476; *Duven-
port* v. *A. & C. R. Co.,* 2 Woods, 519; 20 Ohio St. 137.)
The railway company and Mr. Jewett, its receiver, are not
estopped from asserting the illegality of the agreements
between the plaintiff and the Erie and Genesee Valley Rail-
road Company, and the plaintiff and the Erie Railway Com-
pany, upon which this action is brought. (*Bissell* v. *M. S. &
N. I. R. R. Co.,* 22 N. Y. 258; *Whitney Arms Co.* v. *Bar-
low,* 63 id. 62; *Mad. Ave. Bap't Ch.* v. *Oliver St. Bap't Ch.,*
73 id. 82; Pierce on Railroads [2d ed.], 511, 514, 515;
*Thomas* v. *R. R. Co.,* 101 U. S. 83; *Knowlton* v. *C. & E.
Spring Co.,* 57 N. Y. 518; *Kent* v. *Quicksilver Mining Co.,*
78 id. 185, 186; *Curtis* v. *Levitt,* 15 id. 9; *Tracey* v. *Tal-
madge,* 14 id. 162; *Day* v. *N. Y. C.,* 51 id. 583, 590; *Shap-
ley* v. *Abbott,* 42 id. 443; *Barker* v. *Union L. Ins. Co.,* 43 id.
283; *N. Y. & M. R. Co.* v. *Van Horn,* 57 id. 473; *Shapley*
v. *Abbott,* 42 id. 443; *Odell* v. *Montrose,* 68 id. 499; *Becker*

v. *Hallgarten*, 86 id. 167 ; *Andrews* v. *Ætna Co.*, 85 id. 334 ; *Trenton B'k Co.* v. *Duncan*, 86 id. 221 ; *Woodhull* v. *Rosenthal*, 61 id. 382.) In equity neither the holders of the coupons nor Woodruff have any preference over the other creditors of the Erie Railway Company, upon the theory that their payment is a payment by the receiver of the running expenses of the road, or for the benefit of the mortgaged property, as assignee of a lease, or otherwise. (*Hoyt* v. *Stoddard*, 2 Allen, 442 ; McAdam on Landlord and Tenant, 325, 326 ; Jones on Railroad Securities, §§ 539–544 ; *Wallace* v. *Loomis*, 97 U. S. 146 ; *Miltenberger* v. *Logansport R. Co.*, 106 id. 286, 309, 310, 313 ; *Slausson* v. *Watkins*, 86 N. Y. 597.) The doctrines relative to principal and surety have no application to this case. (4 Kent, 95 ; Taylor's Landlord and Tenant, § 437 ; Jones on Railroad Securities, §§ 330, 337 ; Daniels on Negotiable Securities, 424 ; *Gibbs* v. *Menard*, 6 Paige, 260 ; *Slausson* v. *Watkins*, 86 N. Y. 597.)

RUGER, Ch. J.   By leave of court, the plaintiff has brought this action against the defendants, upon a claim accruing upon a lease of the property of the Erie and Genesee Valley Railroad Company executed by him in 1871 to the defendant, the Erie Railway Company, to require its receiver to pay out of funds in his hands applicable to such purposes, for the use of the leased property, during its occupancy and enjoyment by such receiver in the years 1875, '6, '7 and '8.

The receiver, upon being requested by the plaintiff to pay rent, first claimed that the conveyance by which the plaintiff acquired possession of and an interest in the Erie and Genesee Valley road was *ultra vires*, and that the title thereby claimed by the plaintiff as well as that attempted to be conveyed by him to the Erie Railway Company was invalid and imposed no legal obligation upon him.

This fact, instead of leading, as would be supposed, to a surrender, by the receiver, of the property thus claimed to be illegally held by him, merely led to a refusal to pay the rent reserved in the lease to the Erie Railway Company.

For upwards of three years the defendant Jewett, as such receiver, continued in possession of the property acquired under such lease, and continued to use and operate it as a railroad in connection with the main and subsidiary lines of the original Erie Railway Company.

Upon the trial of the action the defendants urged not only the original objection to the plaintiff's claim, but also several additional grounds of defense, all of which were overruled by the Special Term and judgment was ordered for the plaintiff.

Upon an appeal therefrom by the defendants the General Term reversed the judgment of the Special Term, and ordered a new trial, upon the ground that the conveyance by which the plaintiff acquired his interest in the property of the Erie and Genesee Valley Railroad Company was *ultra vires,* and he, therefore, was under no legal obligation to that company and took no interest in its property, by the conveyance to him. The court further held that, considering the lease to have been a valid obligation, the plaintiff, being under no legal obligation to pay such rent, and not having paid it to the persons thereby entitled, did not occupy such a position or have such an interest as entitled him to maintain an action to enforce the specific performance of his contract with the Erie Railway Company.

The plaintiff, having appealed to this court upon the usual stipulation from the order of the General Term, is met with these and other objections to his right to recover.

The instrument by which the plaintiff acquired an interest in the property of the Erie and Genesee Valley Railway Company, which was a corporation duly organized to build and operate the railroad in question, must be regarded for the purposes of this action as a simple lease of the property for an agreed annual rental of $8,400, which the plaintiff Woodruff expressly covenanted to pay therefor.

The manner of payment agreed upon was, that the plaintiff should pay the interest to whomsoever due upon a certain mortgage for $120,000, given by the Erie and Genesee Valley Railroad Company to certain parties to secure the payment to the holders of bonds for that amount, which had been

negotiated by the company ; although other stipulations between the parties were contained in the agreement produced in evidence, their consideration was waived on the trial, and they do not affect the questions presented on this appeal.

The annual rent reserved by the contract was fixed, and that sum was never to be increased, and could be decreased only by the payment in gross by the plaintiff to the parties therein appointed to receive it, of the sum of $120,000, being a principal, which, at the then legal rate of interest, would produce annually the amount agreed upon as rent. In the event of such payment, the obligation to pay rent was to be reduced to a nominal sum, and the lessees would become entitled to retain possession of the property described to the end of the term. Provision was also made for a surrender of the property by the lessee to the lessors upon the expiration of the term, or the annulment of the lease for other causes.

Immediately after the execution of this agreement by the parties, and its ratification by the stockholders of the lessors, the plaintiff entered into possession of the property demised. On November 8, 1871, the plaintiff, by a written instrument, mutually executed by the parties thereto, leased to the Erie Railway Company all of the property acquired by him from the Erie and Genesee Valley Railroad Company for the term, and upon covenants and conditions similar to those contained in the lease, by which he acquired his interest in the property.

We do not think that either of those leases were void as being either *malum in se*, *malum prohibitum*, or contrary to public policy. Neither do we think that they can be avoided by the respective lessees thereof on account of any want of power on the part of the respective lessors to make such contracts. Such objections come with an ill grace from a corporation which has acquired possession of nineteen independent lines of railroad by virtue of leases, and which is now occupying and enjoying the use thereof, and such party is entitled to such consideration only from the court as the strictest rules of law require.

Whatever may be the rule in other States or in England, the

public policy of this State, as manifested by numerous acts of the legislature, has always been, not only to afford the fullest scope for the consolidation and reorganization of non-competing railroads and railroad corporations, but also for the transfer of the use of such roads and their franchises by one corporation to another.

The first statute passed on this subject was chapter 213 of the Laws of 1839, and is a general law, consisting of a single section providing as follows: "It shall be lawful, hereafter, for any railroad corporation to contract with any other railroad corporation for the use of their respective roads, and thereafter to use the same in such manner as may be prescribed in such contracts," but not in a manner inconsistent with the provisions of the charter of the company whose road was to be used under such contract.

This act has never been repealed, and has been held by this court to confer power upon railroad corporations, not only to acquire, but also to transfer to other railroad corporations, by lease, the exclusive right to use and enjoy the property and privileges of the lessor in such contract. (*Fisher* v. *N. Y. C. & H. R. R. R. Co.*, 46 N. Y. 644; *People* v. *A. & Vt. R. R. Co.*, 77 id. 232; *T. & B. R. R. Co.*v. *B. H. T. & W. Ry. Co.*, 86 id. 107.)

Since this act various statutes have been enacted in this State, recognizing the validity of such leases, and imposing duties and obligations, as well as conferring powers upon the lessees of railroads with a view of enlarging the benefits and privileges enjoyed by them under such transfers. Among those acts may be cited chapter 222, Laws of 1847; chapter 302, Laws of 1855; chapter 582, Laws of 1864; chapter 254, Laws of 1867; chapters 237 and 844, Laws of 1869; chapter 349, Laws of 1880.

It is significant on this question that chapter 582 of the Laws of 1864 requires individuals as well as railroad corporations, who might be operating leased railroads, to build and maintain the fences required by other statutes to be kept up and maintained along railroad routes.

While it has been held that this statute did not, of itself, confer express power upon a railroad corporation to lease its road and franchises to an individual (*Abbott* v. *Johnstown, etc., R. R. Co.,* 80 N. Y. 27; 36 Am. Rep. 572), yet it clearly recognized the validity of such an act whenever competent authority is obtained to make such lease. It would seem to follow from these statutes that the supreme legislative authority of this State does not regard the transfer of the property and privileges of one railroad corporation to another with a view of their operation by the lessees thereof, as either contrary to good morals or public policy.

If such be the rule with reference to transfers by one corporation to another, there would seem to be no distinction so far as the morality of the transaction is concerned between such a transfer and a like transfer to an individual. The vice, if any, is in the act itself and not in the person by whom it is done. (*Bissell* v. *M. S. & N. I. R. R. Co.,* 22 N. Y. 258.) The transfer to an individual may not be expressly authorized by statute, but neither is it expressly prohibited, and the validity of such a transfer, granting the power to make it, is recognized by chapter 582 of the Laws of 1864.

We have carefully examined the several cases cited by the learned counsel for the respondent, in support of the claim that the lease to the plaintiff was contrary to public policy, and, therefore, void, and do not think them applicable to the condition of the law as it exists in this State.

The cases in England and the several States of Vermont, Massachusetts, New Jersey and Ohio referred to, arose under statutes whereby all transfers of corporate franchises were either impliedly prohibited or wholly unauthorized.

The case of *Abbott* v. *Johnstown Railroad Company* held simply that a railroad corporation could not, without the consent of the State, "change its terms or absolve itself from any of its obligations by any conventional arrangement with third persons as to the control and management of its road." The principles there laid down are applicable only to cases arising between third persons and railroad corporations who

have transferred the control and operation of their roads to individuals, and do not purport to decide any thing as to the respective rights of the parties to such contracts.

We do not consider it necessary in this case to determine the question whether a lease by a railroad corporation of its property and privileges to an individual is *ultra vires* or not, as we think it is well settled by authority that a grantee in such a conveyance, at least so far as the contract has been executed, is estopped from contesting the title of his lessor or the validity of the conveyance by which he has acquired possession of the leased property. (Platt on Leases, 57, 58; *Vernam v. Smith,* 15 N. Y. 327; *Ingraham v. Baldwin,* 9 id. 45.)

The estoppel which binds the tenant also binds all who claim through or under him, and no just reason can be alleged why any distinction should be made between the conveyances in evidence which were respectively made to and by the plaintiff Woodruff. (Taylor's Landlord and Tenant, §§ 89, 90, 91, 705, 657; Archbold's Landlord and Tenant, 219.) Not only do we consider the principles of law governing the relations of landlord and tenant applicable to this case, but the general principles of equity relating to the respective rights and liabilities of parties, arising out of contracts between individuals and corporations, which have been partially or wholly performed by either party, preclude them respectively from raising any questions as to the power of the corporation to make such contract.

There is a manifest distinction between cases arising under contracts which are contrary to public policy or *mala in se* or *mala prohibita,* and those which are claimed to be *ultra vires* alone.

This question has been so fully and ably discussed in this court in the case of *Bissell v. Mich. S. & N. I. R. R. Co.* (22 N. Y. 258), and *Whitney Arms Co. v. Barlow et al.* (63 id. 62; 20 Am. Rep. 504), by Judges SELDEN, COMSTOCK and ALLEN, that it would be a work of supererogation to attempt to add any thing to the arguments there advanced.

The principles determined in the case of *Whitney Arms*

*Co.* v. *Barlow* seems to control every view which may be. taken of the respective rights and liabilities of the parties in this case. Judge ALLEN there says: " A purchaser who acquired by contract, and under an agreement to pay for it, the property of a corporation, cannot defeat the claim for the purchase price by impeaching the right of the corporation to become the owner of the property.   One who has received. from a corporation the full consideration of his engagement to pay money, either in services or in property, cannot avail himself of the objection that the contract thus fully performed by the corporation was *ultra vires,* or not within its chartered-privileges or power.   It would be contrary to the first principles of equity to allow such a defense to prevail in an action by the corporation.   It is now very well settled that a corporation cannot avail itself of the defense of *ultra vires* where the contract has been in good faith fully performed by the other party, and the corporation has had the full benefit of the performance and the contract.   If an action cannot be brought directly upon the agreement, either equity will grant relief or an action in some other form will prevail.   The same rule holds *e converso.*   If the other party has had the benefit of a contract fully performed by the corporation, he will not be heard to object that the contract and performance were not within the legitimate power of the corporation."

These propositions are supported by the numerous authorities cited by the learned judge, and meet our full approval.

We have thus arrived at the conclusion that, so far as the defendants are concerned, the contracts between the plaintiff and the several railroad corporations must be treated as valid contracts, binding upon the defendant, the Erie Railway Company, and enforceable against the receiver of such corporation, so far as he has assumed their obligations, acting within the authority of the order creating such receivership.

Other material questions in this case are to be solved by an examination of the principles which govern courts in the distribution of a fund, accumulated in the hands of a receiver, acting under the orders of the court.   Inasmuch as the fund

and the parties to the proceeding are always within the juris-
diction of the court, such distribution is usually summarily
ordered upon the application of the parties interested, by a
rule directing the manner thereof. Courts, in such cases, have
jurisdiction, whenever possessed of the necessary facts, to make
an order for either partial or total disbursement of such fund
among the persons who appear to be equitably entitled thereto.

It can make no difference in the principles which should
govern such distribution as to whether the facts upon which it
is based appear to the court by affidavit and upon a motion, or
through the medium of evidence and findings of the court
upon a trial of an action between the parties interested.

The form of the proceedings cannot affect the ultimate rights
of the parties. The defendant receiver has accumulated a fund
from the use of the property of the insolvent railroad corpora-
tion, operated by him, which is subject to disbursement under
the order appointing him such receiver, and the general rules
of law applicable to trusts such as that which he was appointed
to administer.

The order appointing him receiver was originally made on
the 25th day of May, 1875, in an action in the Supreme Court,
brought in the name of the People by their attorney-general,
under the statutes regulating the jurisdiction of courts of
equity over the estates of insolvent corporations, against the
Erie Railway Company, and the several mortgagees of the
property of such road, and all others interested therein, for the
purpose of dissolving such corporation and distributing its
assets among its creditors.

A supplementary order in such action conferring additional
power upon the receiver was made by the same court on the 29th
day of May, 1875. By such orders, it appeared among other
things, that the receiver was authorized to take immediate pos-
session of all of the property, and exercise the functions, of the
said Erie Railway Company, and continue the operation of the
road in the ordinary and usual course, as the same was then
operated, and to purchase and pay for all such needful material
and supplies as might seem to him to be necessary and proper,

and to do whatever might be needful to maintain and preserve the corporate organization and franchises of the company until final judgment in the action, and to defray the necessary and proper expenses incident thereto. He was further authorized, in the exercise of a sound discretion, to pay any rent then due or that might thereafter become due under any lease then held by the Erie Railway Company, in manner and form as provided by such leases respectively; and in order to prevent a forfeiture of any leases, he was authorized to borrow money for the payment of such rent, and issue the usual receiver's certificates therefor. It was also provided, that the order should not be so construed as to require the receiver to adopt and confirm such leases as he should find to be disadvantageous to all parties.

It appeared by the complaint and affidavits upon which such order was issued, that the Erie and Genesee Valley railroad was one of nineteen other roads which were then leased, run and operated by the Erie Railway Company, and that the annual rental of such road was there described as being $8,400.

By a friendly and apparently auxiliary action commenced by the Farmers' Loan and Trust Company in the Supreme Court, as trustees under the fifth mortgage upon the property of the insolvent railroad, to foreclose the same against the Erie Railway Company, and J. C. Bancroft Davis and James Brown, trustees under prior mortgages, the receiver, Hugh J. Jewett, by an order made in such action on the 15th day of June, 1875, had his authority, as such receiver, extended to cover the interest of the Farmers' Loan and Trust Company under two certain mortgages held by it against the Erie Railway Company, and was further empowered, among other things, to run and operate the roads and lines of the Erie Railway Company, or by it possessed at the date of his receivership, and collect the tolls, income and profits of the same, and to adjust and pay taxes, assessments, charges, rent, and other expenses in and about the proper operation of said roads, but not to divert the income of the mortgaged premises for the benefit of any junior claimant.

On the same day, in a similar action in the Supreme Court,

brought by J. C. Bancroft Davis and James Brown, as trustees, under the certain prior mortgages above referred to, and to foreclose the same against the Erie Railway Company and the Farmers' Loan and Trust Company, a further order extending the power and authority of Jewett, as receiver, was made, which, in all of its material provisions, was similar to that made in the action of the Farmers' Loan and Trust Company above described.

One of the principal objects contemplated by these orders was to enable the receiver to continue the operation of the road and its dependencies, and to prevent any interruption of its business, which would materially impair the value of the road and the security of its mortgagees and creditors.

Invested with these powers the defendant Jewett, on the 25th day of May, 1875, took possession, not only of the property and effects of the Erie Railway Company, but also of the Erie and Genesee Valley railroad and all of its property and appurtenances, and continued to hold possession, and operate it in connection with the other lines belonging to the Erie Railway Company, until they were sold under the decree of foreclosure entered in the action instituted by the Farmers' Loan and Trust Company, in the spring or summer of 1878, at which time the possession of the property by the receiver terminated.

In view of the fact that the Erie and Genesee Valley railroad was named in the papers upon which such order was based as one of the leased roads, and its rental was described as being $8,400 annually, no question can arise as to the meaning and construction of the order, or as to the contemplation of the occupation of that road, and the payment of that sum as the rental thereof.

The receiver having been appointed in an action wherein all of the mortgagees and lien holders of the property of the Erie Railway Company were parties defendant, by orders which have not been modified or appealed from and in which all parties have acquiesced, they cannot now be allowed to dispute or question the power conferred upon him by such orders.     The

court had full power and authority, by virtue of the statutes, and under its jurisdiction as a court of equity, exercising its power over the estate of an insolvent corporation, to direct the manner in which the property of such corporation should be managed and conducted while ·in the possession of the receiver, and the conditions upon which such funds should be paid out.

It would seem to be entirely immaterial as to the source whence the funds in the hands of the receiver were derived or whether the particular portion of such road covered by mortgages contributed more largely to such fund than other portions not subject to such liens.   Under the orders in question the receipts, from whatever source derived, were to form one common fund applicable in the first instance to the discharge of the obligations which the receiver was thereby authorized to incur.

Whatever might be the respective rights of the various parties to this action as between themselves to priority in the participation of the assets of the insolvent Erie Railway Company, such rights could affect only the property remaining after the liabilities created under the receivership had been fully paid and satisfied.   Under the orders referred to it was not only within the power of the receiver to assume the obligations of the several leases referred to, so far as the payment of rent either due or to grow due thereon was concerned, and discharge the same with any funds in his hands, but he was further authorized to bind even the *corpus* of the estate without regard to the rights of the several mortgagees therein in exercising the authority conferred upon him. (*Miltenberger* v. *Loganport R. R. Co.*, 106 U. S. 286; *Langdon* v. *Vt. Cent. R. R. Co.*, 50 Vt. 500; 53 id. 230; 54 id. 503.)

The receiver was not only thus authorized to assume the obligations of the lease and bind the estate in his hands to the payment of the rent accruing thereon, but by entering into the possession of and occupying such leased property he manifested by an unequivocal act his election to regard the continu-

ance of such lease as beneficial for all of the parties interested, and his intention to continue the interest acquired by the Erie Railway Company under such lease. He could not take possession of the property and enjoy its use and occupation without incurring a liability for the payment of the rent under the lease by which his predecessor secured its possession. The principles which govern the liability of an assignee of a lease seem to be applicable to the case of a receiver, and he would be equitably and legally chargeable with the payment of rent under a lease for such time as he continued to occupy the property demised.

While it was competent for him at any time to negotiate a new and secure a modification of the terms of the lease with the consent of the various parties interested, or to repudiate the lease and surrender the property, yet not having done so he must be held to have continued his acceptance under the terms and conditions of the existing lease as to the payment of rent thereon.

His position has been said to be analogous to that of an executor who takes possession and enjoys the occupation of property held under a lease by his testator. He thereby becomes liable for the payment of the rent accruing during his occupation of the premises according to the terms of the lease under which it was acquired. (*Martin* v. *Black*, 9 Paige, 641.) The assignee of a bankrupt also occupies an analogous position and is subject to a similar liability.

While we regard these considerations decisive of the receiver's liability, we have not failed to notice the argument of the respondent as to the equities of the parties founded upon the assumed inability of the leased road to earn the amount of the rent secured by its lease.

If the lease in question was an unprofitable one for the receiver to continue, it was optional with him at any time to terminate it by a surrender of the demised premises and thus avoid liability thereunder.

It seems to us, however, that it does not necessarily follow that the value of any specified portion of an extensive railway system can be measured with exactness by the amount of the

receipts of such particular portion. Its value as a feeder or connecting link in such a system may be largely disproportioned to the actual sum received for transportation over it. Such considerations, influential as they might be in affecting the action of parties in negotiating a contract for the use of a railroad, would preclude a court from holding that the actual receipts of a road thus situated constituted an equitable basis for fixing the compensation to be paid for its use.

If the plaintiff in a proceeding of this kind should be held to the principles upon which courts of equity sustain actions to compel the specific performance of contracts, we think, within the authorities, he has entitled himself to the relief sought.

The principle upon which such jurisdiction is based is defined generally, to be those cases where there is the breach of a contract which was binding in law, but the remedy at law is inadequate. (3 Parsons on Contracts, 352.)

It is quite obvious that this is a case within the rule.

The plaintiff by his covenants with the Erie and Genesee Valley Railroad Company has not only subjected himself to an action on behalf of such company to compel him to pay the interest upon its bonds, but he has also become thereby liable to a similar action on behalf of each of the bondholders secured by the mortgage of this road. He has thus subjected himself to numerous actions and has been put into the possession of the property from which the means for the payment of these claims was expected to be derived. In consideration of the transfers to it by the plaintiff of the same property, the Erie Railway Company expressly covenanted to assume the payment of such interest and to relieve the plaintiff from his liability therefor. The defendant has placed in the hands of the plaintiff the property which was the consideration of, and inducement for such promises. Although the plaintiff, upon the payment of such interest, may be entitled to recover it back from the Erie Railway Company in an action at law, he is under no equitable obligation to pursue such a course. It furnishes a good equitable reason for not requiring such a proceeding in this case that it would necessitate the raising by him in each year of a large amount of

money, which would certainly be difficult, and might be impossible, without the aid of the property which was the consideration of his promise to make such payment. Under such circumstances it would seem to be grossly inequitable to throw upon him the burden of carrying those obligations, while the party ultimately liable for their payment retains the property and unjustly repudiates the obligation by which it was acquired. It is perfectly apparent that if the plaintiff were confined to his remedy at law, that the damages to which he would thereby be entitled, would be quite inadequate to compensate him for the loss which he might and probably would sustain.

Although the plaintiff by virtue of his covenant with the Erie and Genesee Valley Railroad Company was originally primarily liable to pay such interest, yet through his contract with the Erie Railway Company, he, so far as the latter was concerned, has become a mere surety for the payment of the debt, and has the right to call upon it to indemnify and protect him from his collateral liability. A surety who has placed the means for paying a debt into the hands of another, under a covenant to pay the same, can maintain an action in equity to compel the performance of such covenant without first paying the debt, and is not limited to his action on such covenant.

The principles decided in *Marsh* v. *Pike* (10 Paige, 595) seem to be fairly applicable to this case. In that case a mortgagor who had sold and conveyed the land covered by the mortgage, subject to the same, and the payment thereof had been assumed by successive grantees thereafter, was held to be entitled to maintain his action against such subsequent grantees to compel them to pay off and discharge such mortgage. It was held that he was under no legal obligation to pay the mortgage and enforce his claim under the right of subrogation, but that he could file his bill directly and compel the specific performance by his grantees of the covenant to pay. Similar in principle are the cases which hold that the subscriber for stock in an incorporated company upon a sale thereof and the covenant of his vendee to pay and discharge the liability of such subscriber to the corporation, may maintain his action to compel

such vendee to perform his contract. (*Cheale* v. *Kenward*, 60 Eng. Ch. 27; *Tod* v. *Taft*, 7 Allen, 371; *Leach* v. *Fobes*, 11 id. 506.)

The other questions raised and argued in this case are necessarily involved in and determined by the conclusions arrived at in the foregoing opinion.

We are, therefore, on the whole case, of the opinion that the General Term erred, and that the order for a new trial should be reversed, and the judgment of the Special Term affirmed.

All concur.

Order reversed and judgment affirmed.

# MEMORANDA.

OF THE

CAUSES DECIDED DURING THE PERIOD EMBRACED IN THIS
VOLUME, WHICH ARE NOT REPORTED IN FULL.