# Mercantile Trust & Deposit Co. v. Southern Iron Car Line.

## and

# Mercantile Trust & Deposit Co. v. Atlanta Stone, Coal & Lumber Co.

*Intervention in Equity for Lien on Property in Hands of a Receiver, Pending a Suit for the Foreclosure of a Mortgage.*

1. *Powers of receivers; continuation of a lease until expiration of rental term; estoppel.*—Where a bill is filed to foreclose a mortgage executed by a corporation and asks the appointment of a receiver of the corporation, and prays that the receiver be given authority to carry out and renew all contracts that the company may have made, and the appointment is made and authority granted as prayed for, the complainants are estopped to question the continuance of a contract

[Mercantile Trust & Deposit Co. v. Southern Iron Car Line, etc.]

for the lease by the receiver of cars until the expiration of the rental term, in the absence of evidence showing the termination of the lease by the parties or the re-possession of the property by the lessor prior to the end of the lease.

2. *Same; lien for operating expenses; continuation of lease by receiver.*—Where in such case, the receiver of the corporation continues under the authority of his appointment, in accordance with the prayer of the bill, a lease of cars used by the company in the transaction of its business previous to the appointment, the lessor is entitled to a lien upon the corporate assets for the payment of the rental accruing after the appointment in preference to the mortgage debt.

3. *Same; contract for repairs*—In such case, if the contract requires the receiver to make all necessary repairs not the result of ordinary wear and tear, and such repairs are made by the lessor, the latter will be entitled to a lien upon the corporate assets for reimbursement, and the time necessarily expended by the lessor in making such repairs will not be deducted from the rental.

4. *Same; sub-lease by receiver.*—The sub-lease of the property by the receiver and the use of the cars by the sub-lessee, without the knowledge or consent of the original lessor and owner of the cars, does not release the receiver from liability for the rent, or the corporate assets from the lien for its payment.

5. *Same; accounts for rents; decree of court without reference to register's report; presumption.*—In such case, where the court itself, makes up the amount due the lessor on account of rental and repairs and not by way of confirmation of a report of the register, this court, on appeal, indulging a presumption in favor of the decree below, will not reverse unless the amount is shown to be both incorrect and damaging to appellant.

APPEALS from the City Court of Birmingham, in Equity. Heard before the Hon. W. W. WILKERSON.

These two cases, involving substantially the same legal points and dependent upon practically the same evidence, are submitted together on the present appeal.

On November 28, 1893, the appellant in each of the above named cases, the Mercantile Trust & Deposit Company, as trustee in a deed of trust executed by the Mary Lee Coal & Railway Company, to secure bonds issued by said company, filed a bill praying for the foreclosure of the deed of trust, and for the appointment of receivers for the property of said Mary Lee Coal & Railway Company. As to the appointment of receivers, the prayer of said bill was for the appointment of receivers of the said company, with full power and authority to demand from said company and to take into their possession, all its property of every kind and de-

scription, and in addition to the ordinary powers possessed by such receivers, that they be invested with "full power and authority to manage, run and operate said company, and to carry out any and all contracts that said company may have made, (and to renew the same) connected with the conduct of their business," &c. The decree appointing them, which was rendered on November 28th, 1893, was as comprehensive as the prayer.

Prior to the appointment of the receivers, on the 22d of April and May 1, 1891, said Coal & Railway Company had made contracts with the Southern Iron Car Line, and the Atlanta Stone, Coal & Lumber Company, for the rent of a certain number of coal and coke cars for five years, at a specified rental per car each month. The contracts were the same in their provisions, except as to their dates, and the time under the evidence when they were to be terminated; and it was agreed that all the gondola cars were rented from the Southern Iron Car Line, and the coke cars were rented from the other company. It was further agreed, that the proof as to the account of each company should be the same, as to the correctness of the respective accounts. The claim for repairs applies to the gondolas and not to the coke cars. The same person, E. C. Shepherd, was president of each company.

On December 9, 1893, the receivers continued the contracts as they stood, with the provision as to each, that the Coal & Railway Company should pay for repairs to wheels, axles and springs then or thereafter necessary to be made. The original contracts of lease of the cars, contained the provision that the Coal & Railway Company was "to father and protect said cars, and exercise all care over them as if they were their own," and "to keep said cars in good repair at its own expense, less the ordinary wear and tear due to time and natural depreciations, as understood by the Master Car Builder's Rules now [then] in effect." The contracts, by the terms of their renewal or continuance, continued this obligation to repair on the receivers, except as to wheels, axles and springs, which the lessors of the cars assumed to make. There was another modification of the original contract as to the surrender of the gondola cars, but this is not important to be noticed. By the

35

terms of the contract, the Coal & Railway Company was authorized to increase, under the lease, the number of cars it desired; and the receivers, under this provision, leased five additional hopper-bottom cars; making twenty cars of that class in all.

After the bill was filed against said company by the trustee for the foreclosure of the deed of trust, and the receivers were appointed, the two car companies intervened and filed in the cause an application, setting up a claim for car rent, such as had not been paid by the receivers, and praying that the amount due petitioners therefor, be paid by the complainant, and in default of payment, that the property and effects of the insolvent Coal & Railway Company, and the funds in the hands of the receivers, be condemned to the satisfaction. of petitioners' debt, and that a first lien on the assets, property and effects of said company in the hands of the receivers be declared for the payment of the same. The complainant and the said Coal & Railway Company were required to answer the petition, but no answers were filed, so far as appears in the abstract.

The abstract states that the petition was referred to the clerk and register under the provisions of the final decree in the principal cause, for the ascertainment of the claim. After this order of reference, the complainant in the original bill filed objections to the claim on the grounds: (1) that the receivers had no authority to make the contract referred to in the petition; (2) that said cars were not necessary in the successful operation of the mines; (3) that the receivers are not indebted in the amounts claimed, or in any other amounts; and (4) that the amounts claimed are not a lien for the sums stated, or for any other amounts.

It was agreed that in the reference to the clerk and register, he should report, as to the testimony in each of the claims as stated, to the court, ascertaining the amounts which were due prior to the receivership; the amounts which were due prior to the 17th August, 1894; the amounts that are claimed as due since then, and that all questions of the right of the intervenors to recover any or all the amounts claimed should be reserved to the court.

There was in evidence in the case of the Southern Iron Car Line a verified account, marked Exhibit C., which

showed the amount due from the Mary Lee Coal & Railway Company and its receivers to the Southern Iron Car Line. This account was proved to be correct by the testimony of Montgomery, one of the receivers appointed in the case.

Pursuant to the agreement, the clerk and register made his report on each claim separately, finding as to the gondolas constituting the claim of the Southern Iron Car Line, that $331.31 of the account accrued prior to the appointment of the receivers; that $362.95 accrued from December 1, 1893, to August 17th, 1894, and that $329.69 accrued from August 17th, 1894, to May 31, 1895.

In reference to the claim of the Atlanta Stone, Coal & Lumber Company for the rent of the coke cars, the clerk and register of the court reported that $344.85 accrued before the appointment of the receiver; that from November 28, 1893, until August 17th, 1894, $323.54 accrued; that from August 17th, 1894, to May 31, 1895, the sum of $551.13 accrued. The register also reported the testimony taken in the reference. There were no exceptions filed to the report by the complainant, but it was agreed that only legal evidence should be considered by the court.

Such other facts as are necessary to an understanding of the decision in the case of the Atlanta Stone, Coal & Lumber Company, are sufficiently stated in the opinion.

On the hearing of the application of the Southern Iron Car Line, a decree was rendered by the court in favor of petitioner on the claim for rent and repairs to the gondola cars for $601.37, and making the amount a charge on the property of the Mary Lee Coal & Railway Co. superior to the lien of the deed of trust. The complainant appeals and assigns as errors, (1) the decree as rendered; (2) in allowing petitioner the rental of the cars after the termination of the receivership; (3) in allowing petitioner for rental of cars after 28th August, 1894; and (4) in allowing petitioner's bill for repairs.

On the hearing of the application of the Atlanta Stone, Coal and Lumber Company a decree was rendered on January 25, 1896, in favor of the petitioner for $1,485.94, and it was ordered that this amount should be a charge upon the property of the Mary Lee Coal & Railway Company superior to the lien of the deed of trust. The com-

plainant appeals from this decree and assigns as error (1.) The decree of the city court as rendered. (2.) The ruling of the court in allowing claim of petitioner for the rental of the cars after the termination of the receivership. (3.) The ruling of the court in allowing petitioner for the rental of the cars after the 28th of August, 1894.

JOHN P. TILLMAN and ALEX T. LONDON, for appellant. 1. The principle declared in *Meyer v. Johnston*, 53 Ala. 237, 344, approved the case of *Cowdrey v. Railroad Company*, 1 Wood's 331, as affirmed by the Supreme Court of the United States, 11 Wall. 480. The right of the receiver to create obligations is limited to the expenses of its custody and preservation, and in the *Cowdrey Case*, Judge BRADLEY says : "In extraordinary cases, involving a large outlay of money, the receiver should always apply to the court in advance, and obtain its authority for the purchase or improvement proposed." It is insisted in these cases that the receivers, by the terms of the orders appointing them, were authorized to make the contract so as to cover the whole term for which they were to run, and that neither the court nor the receivers could escape liability. The case of *Kneeland v. American Loan & Trust Company*, 136 U. S. 89, is relied on to sustain this proposition ; also *Thomas v. Western Car Company*, 149 U. S. 95. The receivers, not having applied to the court to be allowed to do so, were without authority to make any contract or to contract any further debts which were chargeable against the assets of the corporation.

2. The necessity for the receivers to apply for authority to contract debts for a large amount chargeable on the trust fund, as declared in the *Cowdrey Case* is expressly affirmed by the Supreme Court of the United States in the *Un. Trust Co. v. Illinois Mid. Co.*, 117 U. S. 434, where the case of *Meyer v. Johnston*, 53 Ala. 237, is expressly affirmed. This case is cited and approved by *Chicago Dep. Co. v. McNulta*, 153 U. S. 554.

3. The receivers are not liable to the Stone, Coal & Lumber Company for the full term of the contract. The claim of said company shows that the contract has been performed.— *Vanderbilt v. Cen. R. R. Co.*, 43 N. J. Eq. 669 ; *Lehigh C. & N. Co. v. Cen. R. R. Co.*, 35 N. J.

1896.]　　　　　OF ALABAMA.　　　　　549

[Mercantile Trust & Deposit Co. v. Southern Iron Car Line, etc.]

Eq. 426; Beach on Receivers, § 257; High on Receivers, §§ 186, 273. .

The evidence shows that the term extends beyond the term of the trust, and that the cars are useless to the trust. The cases on which we rely are directly in point, that the court will not, under these circumstances, enforce the contract, although made. It was conceded in the *Vanderbilt Case*, but the court refused to compel the the receivers to perform any part of the contract which had not been performed before the petition was filed.

4. As to the bill for repairs for the Southern Iron Car Line, it will be observed, in the first place, that the bill or claim is made against the Mary Lee Coal & Railway Company. There is no evidence in the case as to when the injury was done to the cars which required repairs. The rule is that the receiver is not liable, except for expenses for repairs which arose during the receivership, and that the burden is upon the petitioner to show that these repairs became necessary by reason of some action or non-action on the part of the receivers. *Thomas v. Western Car Company*, 149 U. S. 95, was relied upon to sustain the claim. In that case the repairs on the cars were made by the lessor. There was evidence before the court that these repairs were in part occasioned by the railroad company, who had been in possession before the receivership, and in part by the receivers. On the testimony before the court, the Supreme Court reduced the claim from $19,-695.00 to $5,775. The distinction between that case and the case at bar is, that here there is no evidence that any of these repairs were occasioned by the act of the receivers. The undisputed facts show, that the receivers never used the cars, except from December, 1893 to June, 1894. The claim for repairs on the cars–$238.42 —is nearly as much as the rentals.

In the absence of any testimony showing, that the damage was done to the cars while in the hands of the receivers, which necessitated the repairs, or some evidence from which such conclusion could be reached by the court, this part of the claim must be disallowed.

MOUNTJOY & TOMLINSON, *contra.*—1. "Where a receiver is appointed at the instance of the trustee in a deed of trust, and required to take possession of the roll-

ing stock under lease, the trust fund is liable for the rental of such rolling stock."—*Kneeland v. American Loan Co.*, 136 U. S. 89; *Thomas v. Western Car Co.*, 149 U. S. 95; Ray on Contract. Lim., 257.

2. "A court may authorize the receiver to make a lease contract extending beyond the litigation or period of receivership."—*Weeks v. Weeks*, 106 N. Y. 626.

HARALSON, J.—1. The correctness of the account marked Exhibit C, in the first of the foregoing cases, for rents and repairs, we do not understand to be questioned.

Its itemized correctness is fully proved, and there is no evidence to the contrary.

The rentals for the gondola cars accruing prior to the appointment of the receivers was properly abandoned by the intervenor, and was thus eliminated from consideration. The only questions for review are, as to the time up to which rentals may be charged and a lien declared therefor; and the right of the intervenor to claim and be allowed his account for rents as proved.

As to these let it be premised, that the complainant itself, in the bill filed in this case, prayed that the receivers, when appointed, should, in addition to the ordinary powers possessed by such receivers, have full power and authority to manage, run and operate said railway company, and to carry out and renew any and all contracts the said company may have made, connected with the conduct of their business. The decree appointing them, responsive to the prayer of the bill, directed that the receivers should continue the operation of the company, the same as then being operated, should keep the premises and property, both real and personal, in good condition and repair, and at their discretion, carry out any and all contracts that said company may have made, and renew the same. Here was the amplest authority to the receivers, without further orders of the court, to continue these contracts for the rental and repair of cars in full force and effect, or to enter into others such as they deemed necessary for the proper conduct and operation of the business of said railway company. When, therefore, they came to these cars, and found them rented from the intervening companies, and being used in the business of the railway company, the receivers had the discretion and authority invested in them,

to continue the business and to renew or continue in force said contracts, as completely as if they had applied in the course of their receivership for special authority to contract. When contracts are continued of force, under such license from the court, they become binding on the receivers; and the property and money of the company in their hands, become liable for the money obligations of the contracts, and are entitled to payment prior to the mortgage debt. Nothing more was done by the receivers, than was prayed for by the mortgagee. The decree was rendered at its instance and request, and for its special benefit. If more authority was given to the receivers than was proper or necessary, it was the mistake of complainant. The court could not be presumed to be experienced in such matters, and to know exactly how many cars were needed for the continued operation of the business of the company. It is to be assumed that the receivers, in doing what the mortgagee requested they might be allowed to do, did what was necessary and proper to be done. This very question has been well and ably considered by the Supreme Court of the United States in the case of *Kneeland v. American L. & T. Co.*, 136 U. S. 89, holding, that where, on the application of a trustee of a railroad mortgage, a receiver is appointed who takes possession of the road and its rolling stock, a part of which was being operated under lease, as in this case, and the receiver continues to operate it, its rentals at the contract price, and not according to its actual use, if not paid from the earnings, will be a charge upon the proceeds of the sale under the foreclosure of the mortgage, prior to the mortgage debt. The same doctrine is maintained in the later case of *Thomas v. Western Car Co.*, 149 U. S. 95. In this latter case, the question of the expenses for the repair of the rented cars came also for consideration. The contract there, as here, bound the receivers to keep the cars in good running order. The court held that the receiver was bound to make the necessary repairs, and if he did not do so, he should be charged with what was reasonably expended by the car company in that behalf after they were surrendered.

Exhibit C. to the petition, shown to be correct in its items, shows the entire sums for rentals and repairs to be $1,024.66. Of this amount, $396.75 was for rent

before the receivers were appointed, which is not claimed. Deducting this sum and the bill for repairs—$236.42—together making $635.18, from the entire bill, —$1,024.66,—and there is left, the sum of $389.48 for rents alone. If to this be added the bill for repairs, we have $627.91, the entire charge for rents and repairs. The court allowed $601.37. By what process this sum was arrived at, is not shown.

The itemized bill makes no charge for rents for any month prior to March, 1894. It contains the monthly rentals for each month from and including March, to and including September, 1894. We take this to be an admission that rents for months prior to March had been paid. It is contended that no rentals should have been allowed after 28th August, 1894. But our conclusion from the evidence is, that the 1st of October is the time, to which rents for the gondola cars should be computed. The receiver, Montgomery, on his examination, was asked if the contract was not subsequently modified, by which the cars were surrendered to the lessor. He replied, that all the gondolas were surrendered about the 1st October, 1894. He does show that the receivers did not use the cars after June, 1894, when they leased the mines they were operating to Drennen & Co. But that lease did not relieve them from obligation to pay rents. The lessor company had nothing to do with it, and was in no way connected with or consenting to it. Drennen & Co. made no reports or payments to the lessor company, and so far as appears, it did not know of the arrangement between the receivers and that firm. The receivers had not modified or in any way repudiated their contract with the lessor, nor had the lessor done anything in repudiation or surrender of it.

The evidence, taken together, shows probably, that the month of September was consumed in making repairs by the lessor. But, as the lessee was to do the repairing, the time it took to do the work, was properly chargeable to the lessee. The same time would have been consumed by the receivers, who were bound to repair, if they had done the work.

The bill for repairs seems to come well within the terms of the contract. Nothing is charged for wheels, axles, springs, or painting, but all the items were for

work such as we may suppose the receivers bound themselves to do.

We find much looseness in the evidence. The counsel do not agree as to the items claimed. We can not discover that the clerk and register followed the claim as filed,—Exhibit C. The court allowed a sum less than is shown by that exhibit, the correctness of which is not disputed. The court made up for itself the amount of its decree, and not by confirmation of the report of the register. We presume in favor of the correctness of the decree of the court. It has not been shown to be incorrect in its amount, damaging to appellant.

We refer to the opinion in the foregoing case as decisive of the legal principles governing the intervention between the Mercantile Trust & Deposit Company v. Atlanta Stone, Coal & Lumber Company, No. 782, both causes having been submitted together as one. In addition to what is there said, as applicable to this case, it may be well to add, that the contract of the Coal & Railway Company, as renewed for the rent of the cars in this case, was for five years from the 5th of May, 1891. The receivers were appointed and took possession of the property on November 28th, 1893. On the 9th December, 1893, by contract with the Atlanta Stone, Coal & Lumber Company, they continued the contract of the Coal & Railway Company for the rent of these cars, as it stood with said Stone, Coal & Lumber Company, so that it would be in operation and effect between the railway and that company, until the end of the lease, on May 5th, 1896.

There is nothing to show that the contract as continued was thereafter, before it expired of its own limitation, changed or abandoned by the receivers with the consent of the complainant. It is true the receivers, as was testified by one of them, J. A. Montgomery, leased the mines to Drennen & Co. in June, 1894, and did not themselves, after that time, operate the mines or use the cars. But with this the lessor company had nothing to do. It was a private arrangement between the receivers and Drennen & Co. The witness testified that there was no contract in respect to the cars between Drennen & Co. and the receivers except the lease to them ; that the contract of lease with Drennen & Co. was made un-

der the order of the court, and that the cars have never been received by the lessor company. Drennen & Co. made no reports or payments to the lessor company, or in any manner recognized that company as the lessor, so far as is made to appear.

In the foregoing opinion, we showed that the continuance of this lease by the receivers was at the instance and request of the complainant, as prayed for in its bill, and, as must be presumed, for their benefit, as they believed, and that they were consequently bound by it. This renewed lease was not for a part of the term, but for all of it, and was expressly authorized by the decree of the court in accordance with the prayer of the bill. There can be no question as to the power of the court to authorize the continuance of the lease, on the application of the mortgagee, for its entire term. The mortgagee cannot be heard to question this authority, its exercise having been invoked by it.

In the other case, it appears satisfactorily by the evidence, that the lease terminated by act of the parties on 1st October, 1894. In this case, as we have stated, the evidence is wanting to show that it terminated by any act of the parties, or that the lessor took possession of the cars, before the end of the lease, on 5th May, 1896. They were bound by principle and authority to pay rent up to that time.—Authorities *supra*; *Weeks v. Weeks*, 106 N. Y. 626; *Woodruff v. Erie Railway Co.*, 93 N. Y. 609; High on Receivers, § § 394 a, 394 b, 394 k. The authorities referred to by complainants' counsel are not, as we consider them, opposed to this view.

The account of the intervenor as itemized is not disputed. The court allowed as rent of this particular lot of cars, the sum of $1,485.94, and we have been unable to discover that such sum was not due on that account, if rents are estimated to May 5, 1896,

The decree of the chancellor is affirmed in both cases. Affirmed.