HENRY W. HUTTON, Respondent, *v.* CONSOLIDATED BRIAR-
WOOD ESTATES and Others, Appellants.

Second Department, December 27, 1918.

Banks and banking — liquidation of bank which had taken over
operations of land company together with assignment of contract
of sale — election by Superintendent of Banks to perform out-
standing contracts — inability of Superintendent of Banks to
perform contract of sale after receiving payments and making
written assurances of deed — liability to purchaser for payments
received.

Where a bank, after taking over the real estate operations of a land
company together with a contract under which said company had sold
lots on installments and had agreed to execute a deed upon final payment,
notified the purchaser of the lots that it was the assignee of the contract
and entitled to payments thereunder and thereafter the State Super-
intendent of Banks took over said bank in liquidation and received
installment payments by the purchaser of the lots during more than a year
and assured him in writing that a deed would be given, said purchaser,
a deed of the lots having been refused, is entitled to recover from the
Superintendent of Banks payment from the funds of the bank in liquida-
tion for all installments paid on the lots, with interest, and should also be
given a vendee's lien on the lots which had been sold on forceclosure
without notice to said purchaser and bid in by the Superintendent of
Banks who subsequently sold them at private sale.

When the Superintendent of Banks took over the bank in question he had
a reasonable interval wherein to investigate and elect which outstanding
contracts he would undertake to perform.

A definite election by the Superintendent of Banks was shown in this case
by the receipt of the installment payments on the lots during more than
a year, followed by written assurances of a deed.

APPEAL by the defendants, Consolidated Briarwood Estates
and others, from a judgment of the Supreme Court in favor of
the plaintiff, entered in the office of the clerk of the county of
Kings on the 14th day of May, 1918, upon the decision of the
court after a trial at the Kings County Special Term.

The judgment directed George I. Skinner, as Superintendent
of Banks of the State of New York, to pay from any funds of the
defendant Union Bank of Brooklyn to the plaintiff, $3,090.63,
and further decreed a vendee's lien upon the two lots purchased
by plaintiff from the Briarwood Land Company of Jamaica.

*Joseph G. Deane* [*Philip A. Walter* with him on the brief], for the appellants.

*Paul Bonynge,* for the respondent.

PUTNAM, J.:

Before the Union Bank closed, it had taken over the real estate operations of the Consolidated Briarwood Estates, which was a reorganization of a land development company originally called the Briarwood Land Company. On June 28, 1907, the Briarwood Land Company had sold plaintiff, who was a city fireman, two lots on installments for a total price of $1,700. On final payment it was to execute a deed of the lots free of incumbrances, with a policy of title insurance. It also covenanted to grade all streets and lay cement sidewalks, plant shade trees, lay water and gas mains, also to lay sewers over, in front of, and appurtenant to the premises within two years.

In January, 1909, the attorneys for the Union Bank notified plaintiff that the Union Bank was assignee of this contract, and entitled to all payments thereunder. About this time the Consolidated Briarwood Estates removed their Jamaica office to 44 Court street, Brooklyn, the building in which was the Union Bank.

On April 5, 1910, the Superintendent of Banks took over the Union Bank in liquidation. In 1911, some eight or nine months after the Superintendent of Banks had been in possession, when plaintiff inquired about his purchase, he was referred to Mr. Dodge, the special deputy superintendent. Mr. Dodge told plaintiff that no one then was empowered to give a deed. He said to plaintiff: " Keep on making your payments and when you are paid up the Union Bank will give you the deed." Plaintiff so continued bi-monthly payments of fifty-six dollars, which were indorsed on his contract by these officials.

In July and August, 1912, he wrote letters to Mr. Dodge, at that time the president of the Consolidated Briarwood Estates, which led to written assurances that a deed would be given as soon as the lots should be released from mortgages. On August 21, 1912, the Third Deputy Superintendent of

Banks also wrote plaintiff and mentioned efforts to get releases, and added that the lawyer "hopes within six weeks to have removed the obstacles so that a deed may be given to you." On the next day, Mr. Goldstein, the attorney in charge, wrote of his efforts to secure such releases, and closed by inviting plaintiff and his lawyer to see him at his office in the Union Bank, when he would make explanation of "anything in this connection which is not perfectly clear." Nothing, however, was done. Plaintiff, having then paid in about $1,700, ceased further payments. The six weeks for the promised releases quietly lapsed. It appears undisputed that the Union Bank owned all the stock of the Consolidated Briarwood Estates, also that of the Metropolitan Holding Company, the latter a corporation in whose name certain real estate was carried. The Superintendent of Banks had designated from among his subordinates and attorneys the officers necessary to keep these corporations alive.

On March 17, 1916, about sixteen and one-half acres of this development called the "Erregger" tract, which included plaintiff's lots, were sold on foreclosure. Plaintiff's contract was not recorded. He was not a party to that suit and was not notified. The Superintendent of Banks bid in the property and took the referee's deed in name of the Metropolitan Holding Company. In the following November, the Superintendent of Banks applied for leave to sell this property, consisting of about 260 lots, at private sale. The supporting affidavit by Special Deputy George V. McLaughlin did not disclose the identity of the buyer. It stated $125,000 as the price for the whole. This undisclosed buyer was to take up and pay for at least 35 lots at the rate of $500 each every ninety days, until the whole purchase price should be paid. Yet such application was without notice to plaintiff, and did not intimate to the court the existence of any outstanding rights of those in plaintiff's position, whose lots might be thus sold. Such sale was authorized by order of December 1, 1916. It was testified that many of such lots have since been conveyed. On the trial it also appeared that this nominal purchaser was a chauffeur, named Rudolph, but that another person was the real party.

In the following February, plaintiff formally demanded his

lots, upon which his payments then amounted to $1,799.94, besides interest. He then brought this suit. The vendor having defaulted in the covenant for improvements, and as the Superintendent of Banks could not give title, plaintiff was adjudged money damages, with a vendee's lien on the lots.

Counsel for the Superintendent of Banks had offered in open court to return $748.50, being plaintiff's payments made after the Union Bank had been taken over. The court, however, decreed plaintiff also a return of his earlier payments, with interest.

When the Superintendent of Banks took over this bank, he had a reasonable interval or "breathing space" wherein to investigate and elect which outstanding contracts he would undertake to perform, and which he would decline to carry out. (*Woodruff* v. *Erie Railway Co.*, 93 N. Y. 609, 624; *United States Trust Co.* v. *Wabash Railway*, 150 U. S. 287, 299; *Commercial Publishing Co.* v. *Beckwith*, 167 N. Y. 329.)

It is unnecessary here to determine how long an interval the Banking Department, as liquidator, might require before such election, since here was a definite election shown by the receipt of plaintiff's installment payments during more than a year, followed by written assurances of a deed. Otherwise such officials would be in an unfair attitude in dealing with installment vendees. Having taken plaintiff's money under express promises of a deed, the officials must carry out that contract, or stand liable for plaintiff's damages.

Most inexplicable is the sale of these lots with the rest of the Erregger tract. The only excuse ventured on the trial was counsel's assertion that plaintiff had lost his equity by the foreclosure and bidding in the property by another corporate instrumentality made use of by the Superintendent of Banks, namely, the Metropolitan Holding Company. As this liquidation is analogous to that by a receiver of a dissolved corporation (*Matter of Union Bank*, 204 N. Y. 313), the liquidator was bound to preserve the interests before him, and could not rightly use such foreclosure to extinguish equities while the holder, entitled to and formally promised a conveyance, had no notice or means to protect his interests.

The injury to this plaintiff is so opposed to fair treatment of lot owners, whose payments have made them equitable

vendees, that hereafter applications to the court under the Banking Law (Consol. Laws, chap. 2 [Laws of 1914, chap. 369], § 69) for leave to sell lots of such development companies should receive special scrutiny. If the liquidating officials are to ignore such rights, the court would be justified in directing a reference as to title and interests before giving to such proposed sale any sanction.

I advise that the judgment appealed from be affirmed, with costs.

MILLS, RICH, BLACKMAR and JAYCOX, JJ., concurred.

Judgment unanimously affirmed, with costs.