Brown *v.* The Buffalo and State Line Railroad Company.

Smith as agent for Henry, while the latter was collector of the estate, was received by Smith in a fiduciary character, and it would have been a violation of duty on his part to convert the same to his own use. " *The presumption then is* that this money remained in his hands at the time he gave the receipt to Henry. The character in which Smith held the money was then changed; before, he held it as the agent for Henry, after, in his official character as collector; then the liability of the sureties attached." Applying these principles to the present case, McPherson held these assets prior to his appointment as the agent of the administrator; upon his appointment he held them in his official character, and then the liability of the sureties attached. As he received them under an agreement to hold them to be delivered to himself as administrator, when clothed with that character, the presumption is, in the absence of any proof showing the time when he parted with them, that he continued thus to hold them, and that the same were received by him in his representative character; and, consequently, the liability of the surety attached.

The judgment of the Supreme Court should be affirmed, with costs.

SELDEN, J., did not sit in the case; all the other judges concurring,

Judgment affirmed.

---

BROWN, administratrix, &c., *v.* THE BUFFALO AND STATE LINE RAILROAD COMPANY.

It is immaterial, under the statute (ch. 256 of 1849), giving damages for negligently causing the death of a person, whether such death was instantaneous or consequential.

That a train upon a railroad was run in Buffalo at a rate of speed prohibited by a city ordinance, passed in pursuance of legislative authority to prescribe a pecuniary penalty for such excess of speed, is not evidence of negligence in fact and, of itself, involves no consequence except liability for the penalty, to the municipal corporation.

APPEAL from the Supreme Court. Action against the defendant under the provisions of the act of December 13, 1847 (ch. 450), as amended by the act of 1849 (ch. 256), for negligently causing the death of Daniel P. Brown, the plaintiff's intestate. On the trial, these facts were established: On the 28th of June, 1856, Brown, together with Rhodes and Shultes, started in a two-horse wagon, the horses and wagon belonging to Rhodes, to go from the city of Buffalo to their home in Springville, in the county of Erie. They started about nine o'clock in the evening and passed along through Elk street, in Buffalo, going in a southerly direction, and when they reached the place where the defendant's railway crosses Elk street, a locomotive and train of cars belonging to the defendant, came along from the northwest and struck the wagon, killing Brown and Rhodes—the former instantly—and seriously injuring Shultes. When the accident occurred Rhodes was driving the horses, and Brown sat upon a seat in the front part of the wagon with, and at the left hand of, Rhodes; and Shultes sat upon a crockery crate, three feet high, immediately behind them. When the locomotive struck the wagon the former was running at a rate of speed exceeding six miles an hour.

The plaintiff gave evidence tending to show that the accident occurred, in part, at least, in consequence of the carelessness of the defendant, which carelessness consisted, as the plaintiff claimed, in neglecting to sound the whistle or to ring the bell; in not providing and keeping a flagman at the crossing at the time of the accident, and in running the locomotive and train at too great a rate of speed. At the time of the occurrence in question there was an ordinance of the city of Buffalo, in force, prohibiting the moving of locomotives or cars on any portion of the defendant's railway within the city at a rate of speed exceeding six miles an hour, under a penalty of one hundred and fifty dollars.

After the plaintiff rested, the defendant moved for a nonsuit on the grounds, 1st. That the injury to, and the death of the plaintiff's intestate were simultaneous; 2d. That the intestate, or Rhodes, who drove the team, was guilty of negligence which

Brown *v.* The Buffalo and State Line Railroad Company.

contributed to produce the injury; 3d. That the evidence did not show the exercise of due caution and care on the part of the intestate in approaching the crossing; that he was not without fault; and 4th. That the evidence did not show the exercise of due caution and care on the part of Rhodes, who drove the team, in approaching the crossing, and that his negligence con tributed to the injury.

The motion was overruled, and the defendant excepted.

The defendant then gave evidence tending to show that there was no negligence on its part, and that the plaintiff's intestate and Rhodes were chargeable with negligence which contributed to cause the death of the former.

The evidence being closed, the defendant asked the court to instruct the jury, that if they believed that the intestate was instantaneously killed, the action could not be maintained. The court refused so to instruct the jury, and the defendant excepted.

The defendant then asked the court to instruct the jury that the evidence established the fact that Rhodes, who drove the team, was guilty of negligence in the manner in which he approached the crossing, and that such negligence contributed to the injury, and the action could not be maintained. The court refused so to instruct the jury, and the defendant excepted. The defendant further requested the court to charge the jury that the plaintiff had failed to show that the intestate exercised due and proper caution in approaching the crossing, and that the evidence did not show that he was without fault, and therefore that the action could not be maintained. The court refused so to instruct the jury, and the defendant excepted.

The court, among other things, charged the jury, that if they believed that the plaintiff's intestate and Rhodes, who drove the team, were free from fault or negligence contributing to the injury, and that the injury occurred while the defendant's train was running in violation of the city ordinance—which had been proven—and at a rate of speed forbidden by it, and that the injury was occasioned by, or would not have oc-

curred except for such violation of the ordinance, the defendant was liable. The defendant excepted to this charge. The jury returned a verdict in favor of the plaintiff, upon which judgment was entered, which was affirmed, on appeal, at general term in the eighth district. The defendant appealed to this court.

*Henry W. Rogers,* for the appellant.

*John C. Strong,* for the respondent.

WELLES, J. The first point made by the defendant for reversing the judgment, is, that, as the evidence shows, without contradiction, that the death of the plaintiff's intestate was instantaneous upon the collision of the train with the wagon in which the intestate was riding, no action will lie for causing his death. Whatever the rule of the common law was in such a case, we are clear that in view of the statute of 1847, above referred to, this objection to the plaintiff's right of action cannot be maintained. The first section of the statute provides that whenever the death of a person shall be caused by wrongful act, neglect or default, such as would, if death had not ensued, have entitled the party injured to maintain an action and recover damages in respect thereof, the person or corporation which would have been liable if death had not ensued, shall be liable to an action for damages notwithstanding the death of the person injured, and although the death shall have been caused under such circumstances as to amount in law to a felony. This provision settles the question, and leaves nothing for debate or doubt. No one would question the right of the intestate in this case, if he had survived the injury, to have maintained an action for it, provided it was caused by the wrongful act of the defnedant and without the fault of the plaintiff in the action. The statute gives the action to the personal representatives of the individual injured, when the injury causes his death, and it makes no distinction between cases where the death was immediate or

Brown *v.* The Buffalo and State Line Railroad Company.

instantaneous, and where it was consequential.   Its object was to remove certain disabilities or obstacles to a recovery in such cases, growing out of the rules of the common law that personal actions die with the person, and that where the act producing the injury amounts to a felony the civil remedy is merged.   We think the authorities cited by the defendant's counsel in support of his position, are inapplicable to cases under our statute.

The next point of the defendant's counsel is, that the plaintiff's intestate was guilty of negligence which contributed to the injury and to his loss of life.   At the time, in the course of the trial, when the plaintiff rested, the evidence of negligence on the part of the intestate was not sufficient, in our judgment, to justify taking the question from the jury.)   Without referring particularly to the evidence, it is enough to say, that it was sufficient to be submitted to the jury under proper instructions, upon the question of negligence of the intestate, or of Rhodes, with whom he was riding; and the motion for a nonsuit on that ground was properly. denied.   When the evidence was closed, if the court had refused to submit the question to the jury upon being requested so to do, I think it would have been an error for which the judgment would be reversed. No such request, however, was made; but the request was, in effect, that the question should be taken from the jury, and was equivalent to asking the court to direct them to find for the defendant.   That would clearly have been improper, as by looking through the evidence on both sides it is seen that the case was one on this question, without regard to the city ordinance, proper for the consideration of the jury; and the bill of exceptions shows that the question was submitted to them.

This brings us to the only remaining question now presented for our consideration; which is, whether the violation of the city ordinance by the defendant, was alone evidence of carelessness sufficient to charge the defendant with the consequences of the collision, provided the injury would not have occurred except for such violation.   The judge's charge was in the affirmative of that proposition.   There was no question

whatever whether the defendant had violated the ordinance. It was proved, without contradiction, that the train was running at a speed greater than at the rate of six miles an hour. If the charge was correct, and the jury believed from the evidence that the injury occurred in consequence of the increased rate of speed over six miles an hour, then the only questions for the jury to decide were, whether the plaintiff's intestate, or Rhodes, was chargeable with a want of care which contributed to the injury, and if that issue should be found in favor of the plaintiff, all they had further to do was to assess the damages. The question of the defendant's negligence in fact, except what was involved in the violation of the ordinance, was entirely ignored by the judge. According to the doctrine of the charge, if the speed of the defendant's train had been at the rate of six miles and a half per hour, and no more, and the injury was caused by the extra half mile of speed, the defendant's negligence would have been conclusively established, although it had been proved that every other possible care and caution had been observed and practised by the defendant. It will be seen that this was quite material, because negligence on the part of the defendant was an essential element in the plaintiff's right to recover. There is no evidence tending to show, that running the cars faster than at the rate of six miles an hour, was necessarily careless or negligent. It is important, therefore, to consider the force and effect of the ordinance in question.

The 18th section of title 3 of the act, entitled "An act to revise the charter of the city of Buffalo and to enlarge its boundaries," provides, among other things, that the common council shall have power to regulate or prohibit the use of locomotive engines and of steam, and to regulate other motive power on any portion of any railroad within the city, and to prescribe and regulate the speed of cars upon any and every part of any such railroad, and to enact ordinances in pursuance of the powers thereby granted, imposing a penalty of not more than one hundred and fifty dollars upon the proprietors or corporations owning such railroad, or their servants, for each

and every violation of any such ordinance. (Laws of 1853, 463, 464.)

The 15th section of the same title directs the mode of proceeding to enforce the collection of all penalties incurred under the act or the ordinances, &c., made in pursuance of it.

Apart from this statute and the ordinance in question, which was passed in pursuance of it, there was no law defining the rate of speed of a railroad train in the city of Buffalo; and except for the ordinance, it was not, *per se,* unlawful for the defendants to run their trains at any speed, provided no actual want of care could be imputed to them. Whether there is negligence in fact usually depends upon a number of circumstances, and not unfrequently the rate of speed becomes quite material in determining the question. Under one class of circumstances, twenty miles would not be deemed unreasonable, while in another five miles or less would be regarded as culpable carelessness.

The bill of exceptions does not profess to give the exact language of the ordinance. It is stated to be an ordinance "which prohibits the moving or propelling of any railroad car or locomotive engine, by means of steam or other motive power, on any portion of the railway of the defendant, in the city of Buffalo, at a rate of speed exceeding six miles per hour, under a penalty of one hundred and fifty dollars for each offence."

The question presented is, whether the legislature intended to authorize the common council to change, and whether the latter intended to change, the common law liability of parties in cases like the present, or whether the penalty annexed to a violation of the ordinance was intended as the only punishment connected with such violation.

In *Behan* v. *The People* (17 N. Y., 516), PRATT, J., who delivered the opinion of the court, says, "it is well settled that where an act is prohibited by statute, which is not criminal at common law, and a penalty is imposed in the same statute, declaring such prohibition, the act is not indictable." The same learned judge then remarks that the rule is based on the assumption that the legislature, having fixed the penalty at

the same time of prohibiting the act, designed that there should be no other punishment.

In *The People* v. *Stevens* (13 Wend., 341), SUTHERLAND, J., who delivered the opinion of the court, says: "Where a statute creates a new offence, by making that unlawful which was lawful before, and prescribes a particular penalty and mode of proceeding, that penalty can alone be enforced." In *Rex* v. *Robinson* (2 Burr., 800), Lord MANSFIELD said: "The rule is certain that where a statute creates a new offence, by prohibiting and making unlawful anything which was lawful before, and appoints a specific remedy against such new offence (not antecedently unlawful), by a particular sanction and particular method of proceeding, that particular method of proceeding must be pursued, and no other."

The principle is a very ancient one, and has never been departed from. It is a most rational interpretation of the law-making power. On passing the act or the ordinance in a case where the thing prohibited was lawful before, the law-makers say to each member of the community, if you do this thing, and as often as you do it, you shall pay such a penalty. That is the whole of it. The act of the defendant in this case, of running their train faster than six miles an hour, was indeed unlawful, but no more so than if there had been no prohibition in express terms in the ordinance. In *Bartlett* v. *Viner* (Carth., 252), HOLT, Ch. J., said, "A penalty implies a prohibition, though there be no prohibitory words in the statute." The act was unlawful, *sub modo*, not in an absolute sense, so as to make the defendant liable to third parties for all its consequences, but it was unlawful as being prohibited by a law which declared the consequence of every act of violation of its provisions, to be the payment of a specific sum of money by way of penalty.

It seems to me that the case before us falls within these principles, and that the simple act of the defendant, of running the train at a greater rate of speed than six miles an hour, unconnected with any actual negligence, involved the defendant in no other consequences than the payment of the penalty.

Brown *v.* The Buffalo and State Line Railroad Company.

This view derives force from the common and usual forms of framing penal statutes. For example, the general railroad act contains provisions requiring a bell to be placed on each locomotive engine to be rung within a specified distance of road and street crossings, or a steam whistle to be attached and sounded, &c., under a penalty of twenty dollars for every neglect, to be paid by the corporation owning the railroad; and declares the corporation liable for all damages sustained by any person by reason of such neglect. (Sess. Laws of 1850, ch. 140, § 39, p. 232.) If the doctrine of the judge's charge in this case was true, the provision referred to in favor of a party sustaining damages by the neglect to provide and ring the bell, or to attach and sound the whistle, was entirely superfluous. In the general railroad act of 1848, there are penalties imposed for various acts and omissions, in regard to some of which it is provided that, in addition to the penalties, the offending party shall be liable for all damages sustained by parties injured by such act or omission; and in respect to others, that provision is omitted. (Sess. Laws of 1848, ch. 140, §§ 25, 29, 35, 37, 42.)

While this argument is not conclusive upon the question under consideration, it is, nevertheless, strong to show that neither the legislature nor the common council intended to visit upon the owners of railroad trains, for the violation of the ordinance in question, any other punishment or consequence, than the payment of the penalty mentioned; and that our law-makers have understood that individuals are not liable to pay damages to other individuals for violations of statutes prescribing specific penalties for such violations, unless such liability is declared in the same statutes, or unless the acts or omissions which constitute the violations, were unlawful, independent of the statutes, and were forbidden or enjoined by the common law. For the misdirection of the judge in the respect referred to, my opinion is that the judgment should be reversed and a new trial ordered, with costs to abide the event.

DENIO, SELDEN and CLERKE, Js., dissented.

Judgment reversed, and new trial ordered.