46   120
s162a620
46   120
a167a554
46   120
63   404

EDWARD S. STOKES, as Receiver of the HOFFMAN HOUSE, Respondent, *v.* HOFFMAN HOUSE OF NEW YORK, Appellant.

*Chancery receiver — powers o) — liability of, for the rent of premises in which he is conducting business pending a mortgage foreclosure — right to recover of the purchaser rent paid — interest thereon — representations made by him in his individual capacity are not binding on him as receiver.*

A chancery receiver is merely an officer of the court, whose function is limited to the preservation of the property committed to his charge and who possesses only such power in respect thereto as is conferred upon him by the court.

A receiver appointed on December 21, 1893, in an action to foreclose a mortgage covering certain leaseholds upon which the mortgagor was conducting a hotel business, under an order empowering him "to take possession of and carry on the several hotels and restaurants, the leases of and chattels in which are covered by the said mortgage, with authority to employ and pay such employees, agents and servants as may be necessary in carrying on said places, and to purchase such supplies as may be necessary for the conduct of said hotels and restaurants, and with authority to do any and all other things which may be necessary or proper to be done in the general and ordinary conduct of similar places of business," is not, in the absence of any further provision in regard to the rent due or to become due, liable for the rent of the premises during the time that he occupied them with the consent of the landlord, where the latter made no claim upon him for such rent, but merely insisted that the terms of sale in the foreclosure action should require the purchaser to pay the rent which had accrued subsequent to December 1, 1893, which requirement was complied with.

Where a corporation of which the receiver is the president purchases the property at the sale, and after the deed has been delivered and the purchaser let into possession, the landlord threatens eviction proceedings unless a substantial payment is made on account of the rent in arrears, and the purchaser being

unable to pay the rent, the receiver without authority from the court pays the same out of the moneys in his hands as receiver, he may maintain an action as receiver to recover such moneys from the purchaser.

RUMSEY, J., dissented.

*It seems*, that such an account bears interest.

Representations made by the person appointed receiver, on the sale by him in his individual capacity of certain stock in the puchasing corporation, in regard to the liens or claims against the property of the corporation, are not binding upon him in his capacity as receiver.

APPEAL by the defendant, the Hoffman House of New York, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of New York on the 24th day of January, 1899, upon the report of a referee, and also from an order bearing date the 18th day of January, 1899, and entered in said clerk's office, denying the defendant's motion for a return of the said report to the referee for amendment.

*David McClure*, for the appellant.

*Charles E. Hughes*, for the respondent.

VAN BRUNT, P. J.:

An action having been commenced by the Farmers' Loan and Trust Company as trustee against the Hoffman House, a New Jersey corporation, to foreclose certain mortgages covering leases and chattels belonging to the defendant therein and which were in the possession of this defendant, and with and upon which it was carrying on a hotel and café business in the city of New York, on the 21st of December, 1893, an order was made appointing Edward S. Stokes receiver of the property covered by the mortgage to foreclose which the action was brought. The order provided that the said receiver " be and he hereby is authorized and empowered to take possession of and carry on the several hotels and restaurants, the leases of and chattels in which are covered by the said mortgage, with authority to employ and pay such employees, agents and servants as may be necessary in carrying on said places, and to purchase such supplies as may be necessary for the conduct of said hotels and restaurants, and with authority to do any and all other things which may be

necessary or proper to be done in the general and ordinary conduct of similar places of business."

The said Edward S. Stokes, as receiver, entered into possession of the property mentioned in said foreclosure action and continued to conduct the business theretofore carried on upon and with said property until the 25th of May, 1894.

On the 24th of January, 1894, a judgment of foreclosure and sale was entered appointing a referee to sell. It appears that there were outstanding 425 bonds of $1,000 each which were secured by the mortgage to foreclose which the action was brought; 300 of these bonds were in the possession and under the control of Edward S. Stokes, the other 125 bonds were in the possession of one William E. D. Stokes, claiming to hold them as collateral security for an indebtedness of said Edward S. Stokes, the latter, however, claiming that the said W. E. D. Stokes had converted them to his own use. On or about the 3d of February, 1894, the present corporation was formed by said Edward S. Stokes, and James D. Leary and E. V. Foote, pursuant to the statute of New York known as "the Business Corporations Law" (Laws of 1892, chap. 691), with a capital of $200,000. On the 2d of March, 1894, that part of the mortgaged property known as the Hoffman House was duly sold at auction by the referee and purchased for the defendant herein for the sum of $120,000. The terms of sale provided that the property was to be subject to all liens of every kind and description, and that unpaid rent, if any, would be allowed to the purchaser. Said terms of sale, also, provided that the purchaser, upon payment of the sum bid, was to receive the property free and clear from unpaid rent then due or taxes or counsel fees or other expenses arising from the receivership; all such claims, if assumed by the purchaser, were to be deducted from the price the property brought. On the 12th of May, 1894, there was a meeting of the incorporators of the defendant at which by-laws were adopted. Edward S. Stokes was elected president, Mr. Foote, treasurer, and Mr. Cornish, secretary. Thereupon a resolution was adopted confirming the purchase made on March 2, 1894, at said foreclosure sale. Of the amount of the defendant's bid, $5,000 having been paid in cash, and said Edward S. Stokes having delivered to the defendant herein the 300 bonds controlled by him in order that they might be used in completing

the purchase, and the state of the case with reference to the other 125 bonds having been reported to the court on the 15th of May, 1894, an order was entered whereby the referee was directed to deliver to the purchaser of the mortgaged property sold by him as above mentioned, conveyances and transfers thereof upon receiving in cash the sum of $5,000 in addition to the sum of $5,000 in cash theretofore paid to him, and also 300 of the bonds of the defendant to secure which the mortgage mentioned in the complaint in the action was given, and also a bond in the penal sum of $35,000 with sufficient surety conditioned to pay to said referee upon demand the cash value of the remaining mortgage bonds of said defendant corporation as soon as their value could be ascertained, and any further sum or sums which might be necessary to be paid under the decree in the action. On the 18th of May, 1894, a meeting of the directors of the new Hoffman House corporation was held at which it was reported that arrangements had been made for the transfer of the property to the corporation on filing the bond directed by the court as aforesaid; and the officers of the corporation were authorized to issue the entire stock of the company, 2,000 shares, to Edward S. Stokes, save 5 shares issued to Mr. Foote and 5 shares issued to Mr. Leary. On the 25th of May, 1894, another meeting of the directors was held at which a resolution was passed for the execution of the $35,000 bond, and this bond was accordingly executed. Thereafter, and upon the same day, a deed was delivered by the referee to the New York corporation of the Hoffman House property so purchased by it, and said corporation went into possession. After this date, however, and until the latter part of June, 1894, the receiver kept the accounts of the receipts and disbursements of the new Hoffman House corporation in his own name and deposited the receipts in his own bank, drawing checks and making cash disbursements therefrom on behalf of the new corporation. On the 29th of June, 1894, said receiver, finding an apparent balance of $9,282.42 in his account, gave a check for that sum to the new Hoffman House corporation and closed his receivership bank account, and thereafter all transactions were had through the bank account of the Hoffman House of New York.

During all the time that the said receiver was in possession of the

leasehold property known as the Hoffman House, he paid no rent to the owners of the leases, nor was any application made to him by the landlord either for the possession of the property or for the payment of rent. The landlord insisted, however, that in the terms of sale under which the said leases were to be sold in the foreclosure action, he should be protected so that the purchaser at said foreclosure sale might be required to pay the rent which had accrued from the 1st of December, 1893, no rent having been paid subsequent to that date. Accordingly the terms of sale were submitted to the landlord, and he was assured by Edward S. Stokes, one of the incorporators of the new corporation, the proposed purchaser, that the purchaser upon going into possession of the property would pay all the back rents. As soon as the Hoffman House corporation went into possession the landlord made a demand for the payment of the rent, and threatened that unless a substantial payment was made on account thereof, he would take proceedings to recover the possession of the leased property. The Hoffman House of New York, having no money with which to pay this rent, in order that that company, of which Edward S. Stokes was president, might keep possession of the property, the said Stokes, as receiver, out of the moneys in his hands as receiver, wrongfully, as is claimed by the plaintiff, paid to the landlord the sum of $10,000 on account of rent, and subsequently the Hoffman House corporation of New York paid all the balance of the rents, amounting to many thousands of dollars.

In January, 1898, the receiver commenced an action against the defendant herein to recover $16,223.27, money alleged to belong to him, which the defendant had collected from the customers who were indebted to the hotel for accounts incurred during his possession as receiver, proceeding as upon an account stated. The answer denied the statement of account and set up a counterclaim alleging that the defendant had paid on behalf of the receiver certain of the receiver's obligations amounting to $35,001.50. In March, 1898, said Stokes, as receiver, began a second action against the defendant, alleging that he had laid out and expended certain moneys for taxes on the Worth House property (a portion of the property covered by the mortgage foreclosed) which by the terms of the lease and under the terms of sale on the purchase of the property, the said defend-

ant was obligated to pay. In this latter action the defendant interposed an answer substantially setting up a general denial and setting up the same facts by way of counterclaim and defense as in the first action.

The two actions came on for trial in May, 1898, and thereupon an order was entered consolidating the actions and amending the complaint in action No. 1 from a cause of action on an account stated to a cause of action for money had and received. The answer of the defendant was amended so as to meet these allegations, and the consolidated action was referred to a referee to hear and determine. He having reported in favor of the plaintiff, a motion was subsequently made to return the referee's report to him, which motion was denied. Appeals were taken from the judgment entered upon the referee's report and from an order denying such motion.

The claim represented by action No. 2 as to the Worth House was withdrawn.

The items in dispute upon the trial before the referee relate almost entirely to the $9,282.42 check turned over by the receiver on the 29th of June, 1894, to the Hoffman House, and to the question as to the liability of the receiver for the rent of the leased premises during the period of his occupation.

It is claimed upon the part of the defendant that because of certain representations alleged to have been made by Edward S. Stokes in selling certain stock in the Hoffman House to one McDonald, he cannot now claim that there was any indebtedness due to him as receiver from the Hoffman House, because of moneys which he as receiver had paid over to the Hoffman House or on its account. We are unable to see how any transactions between Edward S. Stokes and McDonald could, in any way, affect the rights of Edward S. Stokes, as receiver, to recover money from the defendant which he was entitled to receive. If Stokes made any representations to McDonald in regard to the liens or claims against the property in which he was buying an interest, which were false, McDonald has his remedy against Stokes; but certainly representations as to incumbrances upon the Hoffman House property were no part of the duties of Edward S. Stokes as receiver, and even if such representations were made, they could in no manner affect the fund of which he was the guardian. It seems to us, therefore, to be entirely imma-

terial what the transaction between Stokes and McDonald was, inasmuch as it could in no manner affect the right of the receiver to recover any moneys which equitably belonged to him.

It appears from the evidence in this case that experts were employed upon both sides to examine the books of the receiver and of the corporation. These experts agreed as to the exact amounts which the receiver had received from the defendant's business and had paid out on its behalf for wages and supplies, and also the amounts which the defendant had collected on the receiver's account. The experts agreed upon all disbursements made by the receiver for which vouchers were produced; and the remaining disbursements were finally conceded to have been made.

It will appear upon an examination of this evidence that no mention was made by the experts in their report of the check for $9,282.42, that being a payment which was conceded and not in dispute and was in no manner the subject of their investigation, the payment not coming under the head of moneys collected by the Hoffman House from guests, belonging to the receiver, which were the only items of receipts by the Hoffman House which were in dispute. It, therefore, appears that the referee was clearly right in holding that this amount was not included in the experts' report, and that the plaintiff was entitled to credit therefor.

The next question necessary to consider is the claim made by the receiver against the defendant for the $10,000 paid on account of rent; and it would seem that the solution of this contention depends upon the question as to whether there was any liability upon the part of the receiver, at the time of this payment, for the rent which had accrued during the period of his occupation of the premises. It is urged upon the part of the plaintiff that no such liability exists because he was not a statutory receiver but simply a custodian of the premises and of the business which was therein conducted, having no title to the leases of such premises.

The defendant, however, claims that the receiver by taking possession of the leased premises and remaining in possession elected to accept the relation of tenant to the landlord and made himself personally liable for the rent; and in support of this proposition cites the cases of *Woodruff* v. *Erie Ry. Co.* (93 N. Y. 609); *Frank* v. *N. Y., L. E. & W. R. R. Co.* (122 id. 197); *Wells* v. *Higgins*

(132 id. 459), and *U. S. Trust Co.* v. *Wabash Ry. Co.* (150 U. S. 299), and other cases which it is not necessary to particularly mention.

In the case of *Woodruff* v. *Erie Ry. Co. (supra)* by the order appointing the receiver it is apparent that it was contemplated by the court that the receiver should pay the rent under the lease, as he was expressly given authority to continue the operation of the railroad of the company and to pay any rent then due or thereafter becoming due under the lease. It further appeared that rent was claimed of him by the landlord and that he refused to pay or to surrender possession of the premises, and the court held that under such circumstances, by continuing the use and occupation of the property acquired under the lease, a liability for the payment of rent under the lease was incurred.

The case of *Frank* v. *N. Y., L. E. & W. R. R. Co. (supra)* related only to the case of an assignee of a term and not to a mere custodian.

In the case of *Wells* v. *Higgins (supra)* executors and trustees were removed and a receiver appointed of the rents and profits of the real estate, freehold or leasehold, and of the personal property ; and he was expressly authorized to pay taxes and assessments and other lawful charges thereon. In pursuance of this authority the receiver paid rent to the landlord for a portion of the time and he was held liable for the balance of the time he occupied the premises.

In the case of *United States Trust Co.* v. *Wabash Railway* (150 U. S. 299) the rule is laid down that under certain circumstances even a chancery receiver may be liable for rent of premises occupied by him. Before discussing this case, however, it will be necessary to call attention to the case of *The Quincy, M. & P. R. R. Co.* v. *Humphreys* (145 U. S. 82). In the latter case the receivers were appointed to take charge of and operate railroads composing the Wabash system. They operated the leased line for over a year, and the proceedings were brought by the lessor to compel the receivers to pay the rent. The court unanimously affirmed a denial of the application upon the ground that there was no liability upon the part of the receiver, and used the following language : " It is not asserted that these receivers became the assignees of the unexpired

term of the leasehold estate with the right to dispose of it, but it is claimed that because they took possession of the railroad of the Quincy Company and held and operated it until August 1, 1885, they became liable to the extent of the rental up to that time. But the receivers were not statutory receivers, nor did they occupy identically the same position as assignees in bankruptcy or insolvency, and the like. They were ministerial officers appointed by the Court of Chancery to take possession of and preserve *pendente lite* the fund or property in litigation; mere custodians, coming within the rule stated in *Chicago Union Bank* v. *Kansas City Bank* (136 U. S. 223, 236), where this court said: "A receiver derives his authority from the act of the court appointing him, and not from the act of the parties at whose suggestion or by whose consent he is appointed; and the utmost effect of his appointment is to put the property from that time into his custody as an officer of the court, for the benefit of the party ultimately proved to be entitled, but not to change the title or even the right of possession in the property."

"As observed in relation to such a receiver, by the Supreme Court of Maryland, in *Gaither* v. *Stockbridge* (67 Maryland, 222, 224), cited by counsel for appellee: 'It is manifest that the scope of his duties and powers are very much more restricted than those of an assignee in bankruptcy or insolvency. In the case of an assignee in bankruptcy the law casts upon such assignee the legal title to the unexpired term of the lease and he thus becomes assignee of the term by operation of the law, unless, from prudential considerations, he elects to reject the term as being without benefit to the creditors. But not so in the case of receivers, unless it be, as in New York and some of the other States, where by statute, a certain class of receivers are invested with the insolvent's estate, and with powers very similar to those vested in an assignee in bankruptcy. (*Booth* v. *Clark*, 17 How. 331.) The ordinary chancery receiver, such as we have in this case, is clothed with no estate in the property, but is a mere custodian of it for the court; and, by special authority, may become an officer of the court to effect a sale of the property, if that be deemed necessary, for the benefit of the parties concerned. If the order of the court, under which the receiver acts, embraces the lease

hold estate, it becomes his duty, of course, to take possession of it. But he does not, by taking such possession, become assignee of the term in any proper sense' of the word. He holds that, as he would hold any other personal property involved, for and as the hand of the court, and not as assignee of the term.' "

In the case of *United States Trust Co.* v. *Wabash Railway* (*supra*) the broad rule laid down in the case last cited is modified by holding that where a chancery receiver under the express sanction of the court keeps the landlord out of possession who is endeavoring to obtain possession, he is equitably liable for the rent during the time during which he has thus kept such landlord out of possession.

From an examination of these authorities it seems to us that the principle which controls in cases of this character is that mere occupation, undisturbed, and with the consent of the landlord by a chancery receiver, in no maner renders the fund in his hands liable for rents accruing during such occupation; but that if such receiver remains in possession after a demand for the payment of rent by the landlord, or keeps the landlord out of possession of the premises with the sanction of the court, the funds in his hands become equitably chargeable with the rent accruing during such occupation. In other words, a chancery receiver by merely remaining in possession of premises with the consent of the landlord cannot be held to have adopted the lease so that there is any privity either of contract or estate between himself and the landlord.

Applying this rule to the case at bar, we find that no claim for rent was made by the landlord upon the receiver; that he remained in possession and continued the business with the consent of the landlord; that the landlord did not look to him for the payment of any rent, but that his solicitude was to be assured that the purchaser upon the foreclosure sale could be compelled to pay that rent, and that being satisfied with the terms of sale he made no claim whatever for rent until after the deed in the foreclosure suit had been delivered and the purchaser let into possession.

The landlord then demanded the rent of the purchaser, and the purchaser being unable to pay, and the receiver being substantially the corporation which was let into possession, wrongfully took the

money in his hands as receiver to pay the obligations due to the land-lord which it was necessary to pay in order that his corporation should remain in possession of the premises.

The definition of the authority of a chancery receiver, as contained in the cases of *Keeney* v. *Home Insurance Co.* (71 N. Y. 396) and *Davis* v. *Gray* (16 Wall. 218), are in harmony with the above rule. In *Keeney* v. *Home Ins. Co.* it is said : "A receiver *pendente lite* is a person appointed to take charge of the fund or property to which the receivership extends while the case remains undecided. The title to the property is not changed by the appointment. The receiver acquires no title, but only the right of possession as the officer of the court. The title remains in those in whom it was vested when the appointment was made. The object of the appoint-ment is to secure the property pending the litigation, so that it may be appropriated in accordance with the rights of the parties, as they may be determined by the judgment in the action."

In *Davis* v. *Gray* (*supra*) the following language is used : "He is required to take possession of property as directed, because it is deemed more for the interests of justice that he should do so than that the property should be in the possession of either of the parties in the litigation. He is not appointed for the benefit of either of the parties, but of all concerned. Money or property in his hands is in *custodia legis*. He has only such power and authority as are given him by the court, and must not exceed the prescribed limits."

So, also, in *Decker* v. *Gardner* (124 N. Y. 338) it is said : "Such receivers possessed no legal powers. They were officers of the court merely, and their functions were limited to the care and preserva-tion of the property committed to their charge, and they possessed no authority except such as the orders of the court conferred."

It may be claimed, however, that under the terms of the order by which the receiver was appointed he was directed by the court to pay this rent as a necessary incidental expense towards the carry-ing on of the business which he was authorized to conduct. It seems to us that an examination of the language of that order shows that it will not bear any such interpretation. By the order appoint-ing the receiver he was authorized and empowered to take possession of and carry on the several hotels and restaurants, the leases of and

chattels in which were covered by the mortgage being foreclosed, with authority to employ and pay such employees, agents and servants as may be necessary in carrying on said places.

There is not a word said in this order in regard to the payment of any rent either due or to become due. The receiver was to take possession of and carry on the several hotels and restaurants. Then follows the authority to disburse moneys conferred upon him by the order; it is, "with authority to employ and pay such employees, agents and servants as may be necessary in carrying on said places and to purchase such supplies," etc. Under this part of the order it is clear that there was no right to pay rent. It referred entirely to those things which were necessary in the conduct of the hotel business and not to the furnishing of premises in which such business should be carried on. He was to pay the employees and to purchase supplies. This was the class of disbursements he was authorized to make. The order proceeds "with authority to do any and all other things which may be necessary or proper to be done in the general and ordinary conduct of similar places of business." These words evidently refer to the incidental expenses necessary for the conduct of that business; and which in a particular manner had been previously mentioned in the order, namely, the wages of employees and the purchase of supplies. The general language used was not intended to confer authority to make any and every disbursement which the receiver might think proper; but only disbursements of the character previously referred to in the order and which might not perhaps come within the exact language therein used. If it had been contemplated to cover the extraordinary expenditure of many thousands of dollars of rent upon these long leases which were the subject-matter of foreclosure, it would certainly have been designated by the court, it being so particular to specify the nature of the expenditures which the receiver under the order was to be authorized to make. This is the rule recognized in the case of *Quincy, etc., R. R. Co.* v. *Humphreys* (145 U. S. 83) as well as the case of *United States Trust Co.* v. *Wabash Railway* (150 id. 287).

It seems to be well established by authorities in this State that receivers such as the plaintiff possess no legal powers. They are officers of the court merely, and their functions are limited to the care and preservation of the property committed to their charge, and

they possess no authority except such as the orders of the court confer.

In the case of *Wyckoff* v. *Scofield* (103 N. Y. 630) it was held that the receiver of rents and profits in a foreclosure suit had no power without the order of the court to lessen the fund in his hands by expenditures for repairs even though such repairs might have been necessary to preserve the property, the court holding that if necessary for the preservation of the property the court might direct the expenditure, but that the receiver had no authority to make it without such direction.

It, therefore, follows in the case at bar that, without some direction from the court from which he derived his authority to which the receiver could point authorizing the expenditure thus made by him, the payment of the rent out of funds in his hands was a misappropriation as he had no right to deplete the fund in his hands in that way, he not being able to create such a liability. Therefore, there being no liability upon the part of the receiver for this rent, and it having been paid for the purposes of the defendant corporation by its president wrongfully applying funds in his hands as receiver therefor, it seems to us that he is entitled to recover it back in order to make the fund good to the extent of the wrongful expenditure made by him.

In regard to the question of interest, without any lengthy discussion upon the subject, it would seem that it was the ordinary case, not of an unsettled or unliquidated account, but of an account which settled and liquidated itself, and which would naturally bear the interest allowed by the referee.

We are of opinion, therefore, that the judgment and order should be affirmed, with costs.

BARRETT, PATTERSON and O'BRIEN, JJ., concurred; RUMSEY, J., dissented.

BARRETT, J. (concurring):

The difference of opinion in this case is upon the single question, whether the defendant is liable for the $10,000 paid by the plaintiff receiver to the Livingston estate for past rents.

The dispute on this head, as it seems to me, results from the misapplication to a custodian receiver (appointed *pendente lite*) of the

rules relating to administrative receivers. The plaintiff here was not a receiver of the defendant corporation. He was the receiver *pendente lite* of the property which was the subject of the litigation. The title to that property remained in the corporation until it was divested by the sale in the foreclosure action; and the corporation continued liable throughout to its lessor upon the covenants of the lease. The existence of the corporation was not even attacked in the foreclosure action. It follows that the plaintiff, as receiver *pendente lite* in that action, acquired no title to the lease. He was a mere officer of the court and possessed no authority as custodian save that which its order conferred upon him. How then could he be liable for these rents? There was no privity of contract on his part, nor was there privity of estate. A *receiver of the corporation* would have been vested with the corporate estate for administration; and he could have elected to accept the lease, thus establishing privity of estate. But a receiver *pendente lite* of the subject of the litigation could not elect to accept the lease without the express sanction of the court. He has no such independent power or discretion. This distinction between the two classes of receivers is pointed out in an unvarying line of authorities in this State. (*Keeney* v. *Home Insurance Co.,* 71 N. Y. 401; *The U. S. Trust Co.* v. *The N. Y., West Shore & Buffalo R. Co.,* 101 id. 483; *Decker* v. *Gardner,* 124 id. 334.) It was applied in the case of the committee of a lunatic, in *Matter of Otis* (101 N. Y. 585). The committee was there likened to a bailiff, whose possession is the possession of the court, and who consequently takes no title to the property of the lunatic. The Court of Appeals held that the occupation by the committee under a lease to the lunatic — as distinguished from a similar occupation by a receiver or an assignee for the benefit of creditors — creates no privity of estate between him and the lessor. The receiver there spoken of was a receiver who, like an assignee in bankruptcy or for the benefit of creditors, is " vested with the title to the leasehold interest," while a receiver *pendente lite* of the subject of the litigation is simply an authorized custodian, with just such power as the court chooses to confer upon him — neither more nor less. The same distinction has been repeatedly made in the Supreme Court of the United States; and there is nothing in the report of *Dushane* v. *Beall* (161 U. S. 513) to justify

the observation made by Justice RUMSEY, that the rule with regard to election by statutory receivers and its results "is precisely the same with a chancery receiver *as is said by the Supreme Court" in that case.* The Supreme Court in that case was not dealing with or speaking of chancery receivers at all, but of "receivers and official liquidators;" referring plainly to receivers who like assignees in bankruptcy and official liquidators are vested with an estate for administration.

This misapprehension would seem to be the cause of our disagreement. While conceding that an ordinary chancery receiver is not liable, from the mere fact of taking possession of the property, Justice RUMSEY says that *such a receiver* is entitled to a reasonable time to elect whether to adopt or repudiate lease contracts. The mistake here, in my judgment, is in applying this rule to *such a receiver.* That is undoubtedly the rule in the case of a receiver who takes title to the party's estate and becomes vested with it for administration. He can, by adopting the lease, bring it into and make it a part of his trust estate, or he can decline to take it into the trust estate and leave the lessor to his rights as an ordinary contract creditor. The custodian receiver, however, who is a mere agent, like the committee in the *Otis Case (supra),* takes no estate and has none to administer. He does not divest the legal owner of his title and estate nor in that sense does he stand in his shoes. He is the agent of the court, and he can neither add to nor take from the subject-matter placed in his possession.

Having directed him to take possession of that subject-matter, the court may deem it equitable to instruct him to pay the rent while he remains in possession, but that is an equity for the court to consider, not the custodian. If a mere custodian, independently and without the sanction of the court, is bound like a statutory receiver to adopt or repudiate the lease within a reasonable time then, as Justice RUMSEY logically concludes from his premise, the plaintiff here became vested with the title to the leasehold interest, and a privity of estate was created between him and the lessor whereby he became liable upon the covenant to pay rent. But this proves altogether too much, for if the premise with its necessary conclusion be accurate, why was not the plaintiff liable for all the rent which accrued until he was divested of title — as well as for the $10,000?

And if so liable, it is difficult to perceive by what variation in the principle he escaped responsibility for the past rent — additional to the $10,000 — which the present defendant was compelled to pay in order that it might retain possession of the leases purchased, and which is the subject of its counterclaim. Yet we all agree that unquestionably the counterclaim was properly disallowed. If it was properly disallowed, then what becomes of the election theory and its result with respect to the $10,000 payment?

Our divergence then relates back to the status of a custodian receiver, appointed *pendente lite.* If we are right in our estimate of his true status — as I think we are both upon principle and authority — the conclusion is inevitable that the plaintiff was not liable for the rent which, at the defendant's request and to save it from being dispossessed, he paid out of the funds in his hands.

The only other question is, did the court direct the plaintiff, while in possession of the premises, to pay the current rent reserved in the lease?

It is conceded that there was no such direction in express terms; and that concession in my judgment concludes the discussion. So important a direction cannot be injected into the order by implication. The receiver was directed to take possession of the leasehold property, and to carry on the business in the demised premises — *pendente lite.* He was to realize all he could from it for the benefit of the plaintiff in the action and those whom the plaintiff represented. How did this involve an implied direction or authority to accept the lease and pay the rent? Why, indeed, should the receiver have paid the rent? And why should the court have directed him to do so? The defendant in the action was liable for the rent to the lessor. Would it not have been time enough, when the latter expressed dissatisfaction with his lessee's covenant and asked the receiver to pay the rent or leave the premises, *to decide* whether a direction or authority to pay should be given; or whether the receiver should *then* give up the business. The receiver was, in the meantime, directed to conduct the business, and for that purpose to do certain specifically enumerated things — the payment of rent not being among them — and such "other things which may be necessary or proper to be done in the general and ordinary conduct of *similar places of business."*

.That plainly refers to the running administration of an hotel business. It meant no more. In a general sense, it is always necessary and proper to pay the rent of one's place of business — whether similar or dissimilar to that in question — but that surely was 'not what the order imported, or the court intended. It has been repeatedly held in this and other States, and in England, that receivers, *pendente lite*, conducting business under provisions quite as broad if not broader than those under consideration, were not permitted even to make repairs, which they deemed essential, without first securing additional and express authority from the court. ( *Wyckoff* v. *Scofield*, 103 N. Y. 630; *Booth* v. *Clark*, 17 How. [U. S.] 322; *Hooper* v. *Winston*, 24 Ill. 353, 366; *Atty.-Gen.* v. *Vigor*, 11 Ves. 563.)

It is entirely clear that an order which particularized such trivial matters as the employment of servants, left nothing of serious importance to implication.

For these reasons, as well as for those assigned by the presiding justice, with which I concur, the judgment should be affirmed.

Van Brunt, P. J., Patterson and O'Brien, JJ., concurred

Rumsey, J. (dissenting):

I agree with the presiding justice in the conclusions which he has reached in this case, except as to so much of the judgment as provides that the defendant shall repay to the plaintiff, as receiver, the sum of $10,000, which he, on the 4th day of June, 1894, paid to the Livingston estate upon the back rents. So far as that allowance is concerned, I think the referee was in error, and the receiver was not entitled to have it repaid to him.

The facts bearing upon this question are not disputed. The Hoffman House of New Jersey had mortgaged to trustees all its property to secure its bonds to the amount of $425,000. The payments upon those bonds being in default, an action was begun by the trustees to foreclose the mortgage. In that action Edward S. Stokes was appointed receiver, and qualified, and entered upon his duties as such on the 21st day of December, 1893. On that day he took possession of all the mortgaged property. That property consisted of the furniture in the buildings which together had been occupied as the Hoffman House for hotel purposes, with wines, liquors, and

everything of that kind which were upon the premises, and of the premises which were so occupied. The Hoffman House corporation occupied these premises solely as lessee from various owners, and the leases constituted all its interest in the premises, and it had no further right to occupy them than such as it had acquired as tenant. One of the leases had been made by the Livingston estate which was the owner of a portion of the premises. At the time Stokes took possession under the order, the rent from the 1st of December, 1893, was unpaid. The rent due upon the Livingston lease was $74,000 a year. It does not clearly appear just how that rent was payable, but I think it is fairly to be inferred from the evidence that it was payable either weekly or monthly. The rent would be something over $6,166 a month. By the terms of the order, which will be referred to more at length later, Stokes was required to take possession of this property and carry on the hotel and restaurants. He continued to occupy the property as receiver until it was taken possession of by the defendant, who purchased it at the foreclosure sale. The property was bid off by the defendant on the 2d of March, 1894. The sale was confirmed on the 15th of May, 1894, and the referee was on that day directed to deliver possession of the property to the purchaser. The deed to the property was executed to the purchaser on the 25th of May, 1894, and on that day the property was delivered to it. Up to that time no rent had been paid to the Livingston estate. By the terms of sale it was provided that the unpaid rent, if any, would be allowed to the purchaser, and it was further provided that the unpaid rent if assumed by the purchaser would be deducted from the price the property brought. The bid upon which the property was struck off to the Hoffman House was $120,000. Ten thousand dollars of that amount was paid in cash, and the referee, by direction of the court, received as a final payment upon the bid $300,000 in the bonds of the old Hoffman House, to secure which the mortgage had been given, and a bond in the penal sum of $35,000 conditioned to pay to the referee the cash value of the remaining mortgage bonds, being about 125 in number, and any further sum or sums which might be necessary to be paid under the decree in the action.

Upon compliance with this direction of the court the deed was

given by the referee. Neither in that deed nor by the terms of sale did the purchaser assume any of the rent, nor did it in any way become bound to pay it. Before the sale the agent of the Livingston estate applied to the receiver for the payment of the rent, evidently seeking to be assured that it would be paid before the property was sold. No promise or agreement was made by the receiver as such that the rent should be paid; but it is evident from the testimony that the agent was given to understand that after the sale there would be a payment of the rent. At any rate it is clear that he received such assurances as satisfied him and induced him to be quiet.

The articles of incorporation of the defendant were filed in February, 1894. Three directors were named in these articles of incorporation, of whom Edward S. Stokes was one. Each of the directors were owners of five shares of the stock at that time and no other further issue of stock was made so far as appears.

Nothing further by way of organization was done until the 12th day of May, 1894, some months after the sale. No officers of the board of directors had been selected, nor had any by-laws been adopted. It is quite evident, therefore, that any conversation which might have taken place between Harris, the agent of the estate, and Stokes as to the payment of this rent, was not binding on the defendant, even had it amounted to an express agreement that the purchaser would pay the rent. But there was no such agreement, nor was there any pretense of one until long after the sale had been made and the rights of the parties had accrued.

On the 4th day of June, 1894, there was due to the Livingston estate over $40,000 for rent since December 1, 1898, of which about $15,000 had become due while the receiver was in possession of the property, and on that day $10,000 was paid by the receiver to apply on the rent. He credited himself in his accounts as receiver with that sum, so that it is fair to assume, unless we are to infer that he intentionally made a wrongful payment, that he proposed to pay that amount out of the funds in his hands as receiver, to apply on rent which had accrued while he was in possession of the premises as such.

I do not agree with the presiding justice that if the payment was wrongful it follows that the defendant was bound to make it good

in face of the agreement that the unpaid rents were to be deducted from the purchase price and of the fact that the purchaser did not assume it. There is nothing in the case from which it can be inferred, it seems to me, that the defendant, the purchaser, bound itself to be responsible for the rents which had accrued and become payable before it came into posession ; and, therefore, even if the receiver wrongfully paid it, there is no reason why the amount of such payment should be charged upon this defendant who had not become in any way liable for it. Stokes confessedly made the payment as receiver although when so made it was for the benefit of the defendant, but the defendant was not bound to pay it, and I can conceive of no rule which warrants a judgment against the defendant for this payment. To be sure Stokes was president of the defendant as well as receiver, but as he says, he paid this money from funds belonging to the receivership, he credited himself as receiver with it, and he did it because the defendant had no money with which to do it. He had no authority to charge the defendant with this payment, and, therefore, there is no reason why it should be charged with it here.

But, passing that point, I agree with the learned presiding justice that, if the receiver as such had become liable for the payment of this rent, then the defendant cannot be adjudged to repay it to him, and the question is, therefore, whether upon all the facts the receiver had become chargeable.

He was an ordinary chancery receiver, and the rule in such cases is well settled that he does not become liable by the mere fact of taking possession of the property. He is entitled to a reasonable time to elect whether to adopt or repudiate such contracts. If he elect to adopt a lease the receiver becomes vested with the title to the leasehold interest, and a privity of estate is thereby created between the lessor and the receiver, by which the latter becomes liable upon the covenant to pay rent. (*U. S. Trust Co.* v. *Wabash R'way*, 150 U. S. 287, 299 ; *Matter of Otis*, 101 N. Y. 585, Andrews, J.)

The principle as laid down by the presiding justice is that a mere occupation undisturbed and with the consent of the landlord by the chancery receiver, in no manner renders the funds in his hands liable for rent accruing during such occupation ; but that if such

receiver remains in possession after a demand for the payment of the rent by the landlord, or keeps the landlord out of possession of the premises with the sanction of the court, the funds in his hands become equitably chargeable with the rent accruing during such occupation. I am not disposed to quarrel with so much of this statement of the rule as charges the receiver with the rent if he keeps the landlord out of possession with the sanction of the court, and if it be adopted there arises a question as to the evidence, and that is whether, upon all the facts made to appear in this case, it can fairly be said that the receiver did so keep the landlord out of possession of the premises. If the receiver was bound to hold the possession, or if, after taking possession, it can be inferred that he had retained it after a reasonable time to elect either to carry on the business or to sell it at a profit, the landlord might infer that liability for the rent had been assumed, and might repose upon that inference without making any hostile claim against the receiver. It seems to me that this is a fair inference from all the cases.

In *The Sunflower Oil Company* v. *Wilson* (142 U. S. 313) it is said that the receiver upon taking possession of the premises is entitled to a reasonable time to elect whether he shall adopt a contract and make it his own, or whether he shall insist upon the inability of the company to pay, and return the property in good condition, paying of course the stipulated rental for it so long as he used it.

The rule in England, which seems to be well settled, is that if the liquidator has retained possession for the purpose of winding up, or if he has used the property for carrying on the business of the corporation, or has kept it in order to sell it, or to do the best he can with it, the property in his hands becomes liable for the rent. (*In re Oak Pits Colliery Co.*, 21 Ch. Div. 322, 330; *In re Lundy Granite Co.*, L. R. [6 Ch. App.] 462.)

The same rule is laid down substantially by the courts of this State. (*Frank* v. *N. Y., L. E. & W. R. R. Co.*, 122 N. Y. 197; *Woodruff* v. *Erie Ry. Co.*, 93 id. 609; *Matter of Otis*, 101 id. 585, per ANDREWS, J.)

It is quite true that these cases, just cited, except the last one, are cases where the title passed to the liquidator or assignee if he chose to take it; but he was not obliged to do so unless it was for the interest of the company which he represented, and he had a reasonable

time given him in which to elect. As to his election and the results following the election, the rule is precisely the same with a chancery receiver as is said by the Supreme Court of the United States in *Dushane* v. *Beall* (161 U. S. 513, 515). In none of the cases is it suggested that a demand of rent by the landlord is necessary to put the receiver to his election, but the only question in each case is whether the thing which the assignee or receiver has done amounts to an election, and that, as I look at it, is the only question presented here. In that regard the facts are very simple.

The conceded fact that a mere chancery receiver, such as this one is, does not take any title to the property, is beside the question, which is whether there are any circumstances in which such a receiver will be charged with the payment of rent. The *Wabash Railway Cases* (145 U. S. 82; 150 id. 287) were those of that kind of a receiver, and the rule there laid down can be relied upon as applying to this case.

The entire value of the property consisted of the leases. The receiver was required by the order to take possession and carry on the hotels and restaurants which were situated on the leasehold premises. The requirement to carry on the hotels and restaurants bound him to keep the possession for that purpose. He could not have surrendered that possession if he had wished to so long as that part of the order was in force. He was not there solely to preserve the property, but to carry on the business of the company so that the leaseholds would sell to better advantage. The case was, therefore, precisely within the rule of the cases above cited. He was also given authority not only to employ agents and servants and to purchase supplies, but to do any and all further things which might be proper to be done in the general and ordinary conduct of similar places of business. That order necessarily required him not only to take possession of the property, but to carry on the business, and he was bound, in so doing, to do whatever was necessary to be done in the general and ordinary conduct of that business.

The extent of this particular portion of the order cannot be limited, I think, as is done by the presiding justice. It certainly was not intended to limit this to the hiring of employees, nor to buying supplies, for those were expressly provided for. It must have been intended to include all other things which were necessary to keep

that business as a going business, so that the value of it should be preserved during the continuance of the suit, and if it had that construction it clearly authorized and permitted whatever the receiver might become liable for as the result of his retaining possession of the premises as receiver of the company. There is no doubt that even if under this order it had become apparent to the receiver that the business could not be continued but at a loss, the court, this fact having been made clear, would have permitted him to give up the leases. There is no doubt either that if the business were profitable it was his duty, under the order, to remain in possession; and if he saw fit to remain in possession for the purpose of carrying on the business, he must have been deemed to have elected to remain for the term, and if he did he became liable for the rent while he retained the possession. (*Sunflower Oil Co.* v. *Wilson*, 142 U. S. 313; *Martin* v. *Black*, 9 Paige, 641; *Commonwealth* v. *Franklin Ins. Co.*, 115 Mass. 278.)

In what was done subsequently it was quite clear that the receiver had elected to take possession of the term. Not only did he remain in possession and carry on the business for the benefit of the insolvent corporation and of the mortgagees, but the leasehold, which could only retain its vitality because of the possession of the receiver, was decreed to be sold and was sold, and before it was sold the receiver gave to the landlord assurances that the rent would be paid. It is impossible, as it seems to me, in considering all the facts of this case, to come to any conclusion except that it is precisely within the rule which has been laid down, that the receiver must make his election within a reasonable time; and as he retained possession of the premises for the benefit of those who were interested in keeping alive the leasehold interest, he is bound to pay the rent.

It may be that the receiver ought to have applied to the court for leave to pay this rent before the payment was made, but there can be no doubt that upon such an application he would have been directed to pay it, and that being so, it is of no importance here whether it was made or not. The case in this aspect must stand upon the proposition that the receiver had become liable for the rent and the court would have compelled him to pay it had an application been made.

The fact that the defendant cannot recover upon its counterclaim

the money it paid to the landlords on account of rent falling due while the receiver was in possession, is not irreconcilable with the conclusion which I have reached. It does not follow that because the receiver cannot recover from the defendant, the defendant can recover from the receiver. The reason why the receiver cannot recover from the defendant is that there is no contract, express or implied, between them, and the same reason exists why the defendant cannot compel the payment by the receiver of what it paid for rent. When it bought this property the defendant made no contract with the receiver. Its dealings were only with the referee. Whether the rent which it paid for the time that the receiver was in possession was deducted from the purchase price as the contract said it should be, does not appear, but there is no doubt that the defendant was entitled to have it so deducted, and its remedy to get back the rent is to be sought by procuring that deduction and not by recovering it from the receiver who entered into no contract relation with it, and, therefore, incurred no liability towards it. For the reasons thus stated, I cannot agree with so much of the judgment of the court as permits the recovery by the receiver of this sum of $10,000.

Judgment and order affirmed, with costs.